1

2

THE HONORABLE JOHN C. COUGHENOUR

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

9

| | |
|---|---|
| GARY KIRKWOOD, on behalf of himself and others similarly situated, | Case No. 2:18-cv-00360 |
| Plaintiff, | **JOINT MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT** |
| v. | |
| NOBLE FOOD GROUP, INC., NFG CHICAGO, LLC, NFG PORTLAND, LLC, NFG SALEM, LLC, NFG SAN FRANCISCO, LLC and NFG SEATTLE, LLC, | NOTE ON MOTION CALENDAR: January 11, 2019 |
| Defendants. | |

20

21      Named Plaintiff Gary Kirkwood and defendants Noble Food Group, Inc. NFG Chicago,

22   LLC, NFG Portland, LLC, NFG Salem, LLC, NFG San Francisco, LLC and NFG Seattle, LLC

23   (collectively, "NFG") jointly move for final certification of this case as a collective action for

24   settlement purposes and for approval of their settlement. This motion is based on the pleadings,

25   record in the case and the attached declarations of counsel and exhibits, filed concurrently

26   herewith.[1]

27
---

[1] The Settlement Agreements referenced in this motion are submitted herewith as Exhibit 1. Declarations of Plaintiffs' Counsel are attached as Exhibits 2-3.

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

## TABLE OF CONTENTS

Background ..................................................................................................................1

Legal Analysis ............................................................................................................2

    I.      There Was A Bona Fide Dispute ..................................................................3

    II.     The Settlement Is Fair and Reasonable........................................................3

         A.  Factor 1: The Settlement Is the Result of Arm's Length Negotiations.................5

         B.  Factors 2 and 3: Plaintiffs' Recovery Is Fair and Reasonable .............................6

         C.  Factor 4: The Litigation Risks Are Significant....................................................6

         D.  The Scope of the Release Is Commensurate with the Claims Asserted ...............7

         E.  Reaction of the Opt-In Plaintiffs........................................................................7

    III.    The Named Plaintiff's Service Award Is Reasonable...................................8

    IV.   Plaintiffs' Counsels' Fee Recovery Is Reasonable ......................................9

         A.  *Kerr* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case .................................................11

         B.  *Kerr* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee ................................................................................................13

         C.  *Kerr* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work ...................................................................................................14

         D.  *Kerr* Factor (12): Awards in Similar Cases .....................................................15

    V.    Plaintiffs' Counsels' Cost Recovery Is Reasonable.................................16

Conclusion ................................................................................................................16

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106

TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945) ..................................................9

*Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240 (1975) ..................................................10

*Ambrosino v. Home Depot U.S.A., Inc.*,
    2014 WL 3924609 (S.D. Cal. Aug. 11) ..................................................4, 6, 7, 10

*Armes v. Hot Pizzas, LLC*,
    Case No. CV-16-01152-PHX-JJT (D. Ariz. Jun. 9, 2017) ..................................................10, 16

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ..................................................10, 15

*Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822 (C.D. Cal. July 14) ..................................................10, 15

*Bickley v. CenturyLink, Inc.*, 2016 WL 9046911 (C.D. Cal. Nov. 29) ..................................................15

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ..................................................10

*Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114 (W.D. Wash. 2011) ..................................................1

*Campbell v. C.R. England, Inc.*, 2015 WL 5773709 (D. Utah Sept. 30) ..................................................10

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ..................................................8

*Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................15

*Deaver v. Compass Bank*, 2015 WL 8526982 (N.D. Cal. Dec. 11) ..................................................6

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) ..................................................8

*Goodwin v. Citywide Home Loans, Inc.*, 2015 WL 12868143 (C.D. Cal. Nov. 2) ..................................................16

*Goudie v. Cable Comm'ns, Inc.*, 2009 WL 88336 (D. Or. Jan. 12) ..................................................4

*Grewe v. Cobalt Mortg., Inc.*, 2016 WL 4014114 (W.D. Wash. July 27) ..................................................2, 4, 5

*Harris v. Vector Mktg. Corp.*, 2012 WL 381202 (N.D. Cal. Feb. 6) ..................................................9

*Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360 (D. Md. Dec. 19) ..................................................12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................13

*Hopkins v. Stryker Sales Corp.*, 2013 WL 496358 (N.D. Cal. Feb. 6) ..................................................10

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ..................................................11, 13

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................5

*In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................15

*Jimenez v. Pizzerias, LLC*, 2017 U.S. Dist. LEXIS 129820 (S.D. Fla. Aug. 14) ..................................................12

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ..................................................11

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2) ..................................................10

*Larson v. Desert Sun Pizza, LLC*,
    Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) ..................................................10, 16

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ..................................................2, 3

*Mashburn v. Natl. Healthcare, Inc.*, 684 F. Supp. 679 (M.D. Ala. 1988) ..................................................9

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608 (N.D. Cal. Dec 19) ..................................................3

*Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................................................6

*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. 2014) ..................................................3, 9

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..................................................4

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ..................................................9

*Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017) ...........................14

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ...........................................................10

*Rodriguez v. West Publishing*, 563 F.3d 948 (9th Cir. 2009) ....................................4, 5, 8

*Ruiz v. JCP Logistics, Inc.*, 2016 WL 6156212 (C.D. Cal. Aug. 12) ................................9

*Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016) ..................9

*Seminiano v. Xyris Enter., Inc.*, 602 Fed. Appx. 682 (9ᵗʰ Cir. 2015) .............................2

*Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) ...........................12

*Staton v Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).......................................................8

*Syed v. M-1, LLC*, 2017 WL 3190341 (E.D. Cal. July 27) ...........................................10

*Thomas v. Kellogg Co.*, Case No. 3:13-cv-05136-RBL (W.D. Wash.) ...............................14

*Van Vranken v. A. Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995) ............................15

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) .......................10

*Velazquez v. Int'l Marine and Indus. Applicators, LLC*,
    2018 WL 828199 (S.D. Cal. Feb. 9) ...........................................................14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................15

*Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282 (D. Kan. 2010) ...........................11, 12

*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) .........................12

*Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010) .................8

*Yue Zhou v. Wang's Restaurant*, 2007 WL 2298046 (N.D. Cal. Aug. 8)........................10

**Rules and Statutes**

29 U.S.C. § 201 ...........................................................................................1

29 U.S.C. § 216 ...................................................................................1, 9, 10

Wash. Rev. Code § 49.46 .........................................................................1

**BACKGROUND**

Plaintiff Gary Kirkwood, a pizza delivery driver, filed this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and the Washington Minimum Wage Act ("WMWA"), Wash. Rev. Code § 49.46, *et seq.*, on behalf of himself and other similarly situated persons on March 8, 2018. He alleged, *inter alia*, that NFG's reimbursements to him and other delivery drivers for the expenses they incurred using their personal vehicles to deliver NFG's products to customers were insufficient, causing their net wages to fall below the applicable state and federal hourly minimum wage rates (nominal wages – unreimbursed vehicle costs = subminimum net wages). (Compl. ¶¶ 1, 13-39, 42-80).

Employees may bring FLSA claims on behalf of other similarly situated employees. 29 U.S.C. § 216(b). Unlike Rule 23 class actions, FLSA collective actions require employees to "opt in" by filing a written consent to join with the Court. *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011). After early case management negotiations, NFG stipulated to conditional certification of the collective action in exchange for Plaintiff's dismissal of his WMWA claims, but with an agreement to attempt to resolve the case through mediation after the close of the "opt in" period using higher state law minimum wages as the minimum wage threshold. The parties negotiated a form of notice to be mailed to eligible opt-in plaintiffs. On May 2, 2018, the parties filed a joint stipulation to conditional certification of the collective action and dismissal of the WMWA claims and asked the Court to approve the parties' proposed notice. (Doc. 12). The Court granted the motion on May 4, 2018. (Doc. 13). NFG then provided names, addresses, and dates of employment for, and Plaintiff's counsel mailed the notice to, all current and former delivery drivers who worked for NFG at any time within the preceding three years. Pursuant to the Court-approved notice, eligible collective action plaintiffs were allowed up to 75 days to opt-in to the action.

Plaintiff Kirkwood amended his complaint on May 6, 2018 ("Am. Compl.") (Doc. 14). Therein, he dismissed his WMWA claim.

A total of 435 individuals, including the Named Plaintiff, filed timely consents to join this lawsuit. (*See generally*, Docket). By agreement, NFG produced payroll, delivery and

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

reimbursement records for each opt-in Plaintiff. That information was used to evaluate the parties' claims and defenses, and to calculate a range of potential damages. On October 30, 2018, after careful analysis of all this information, the parties mediated for a full day with Hunter Hughes serving as mediator. During the mediation, NFG disclosed financial statements showing that collection of a sizable judgment would be unlikely, and Plaintiffs adjusted their demands accordingly. Nevertheless, the parties were unable to reach a settlement at the mediation and departed without a settlement. At the urging of the mediator, the parties continued to negotiate in good faith through the mediator, resulting in an agreement to the terms of a settlement on November 6, 2018.

On November 19, 2018, Plaintiffs' Counsel mailed a letter to each of the opt-in Plaintiffs explaining the material terms of the settlement, including an estimate of the amount they would receive, the scope of the release, the tax treatment of the settlement, the amount of the attorneys' fees, costs, and service award being sought, and providing the opt-in Plaintiffs until December 27, 2018 to convey any objection to the settlement. One opt-in Plaintiff who was originally slated to receive the minimum $25 payment initially objected because the records produced by NFG inaccurately showed that he was only a driver for a few weeks. After correcting those records, Plaintiff's counsel re-allocated the settlement distribution so that this plaintiff would receive the same amount that he would have been allocated had the records been correct from the beginning. That Plaintiff then withdrew his objection.

### LEGAL ANALYSIS

To effect a binding release, the Ninth Circuit requires judicial or U.S. Department of Labor approval of FLSA settlements. *Seminiano v. Xyris Enter., Inc.*, 602 Fed. Appx. 682, 683 (9th Cir. 2015) (citing with approval *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). An FLSA settlement should be approved if the settlement is a "fair and reasonable resolution of a bona fide dispute." *Grewe v. Cobalt Mortg., Inc.*, 2016 WL 4014114, *1 (W.D. Wash. July 27), quoting *Lynn's Food Stores*, 679 F.2d at 1355. "If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id.* (quoting *McKeen-*

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106

*Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608 at *2 (N.D. Cal. Dec. 19) (quoting *Lynn's Food*, 679 F.2d at 1354)). The Court should readily conclude that the parties' settlement here constitutes a fair and reasonable resolution of a bona fide dispute.

## I.    There Was A Bona Fide Dispute

A settlement addresses a bona fide dispute when it "reflect[s] a reasonable compromise over issues ... that are actually in dispute." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (quoting *Lynn's*, 679 F.2d at 1355). Here, Plaintiff alleged that under-reimbursed automobile expenses caused minimum wage violations. NFG denies Plaintiffs' substantive allegations, asserts that Plaintiffs were reasonably reimbursed for vehicle costs, and contends that Plaintiffs were compensated at or above the applicable minimum wage. (Ex. 1, p.1).

NFG produced, and the parties analyzed, detailed data specific to each of the opt-in Plaintiff's allegations of liability and damages. If a jury agreed with Plaintiffs' allegations about a reasonable reimbursement rate, NFG could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiffs' attorneys' fees and costs. If a jury agreed with NFG about a reasonable reimbursement rate, Plaintiffs would obtain no recovery whatsoever. These facts clearly demonstrate the existence of a bona fide dispute.

## II.    The Settlement Is Fair and Reasonable

The settlement was the product of arm's-length negotiations by experienced counsel, facilitated by a highly experienced and skilled mediator, Hunter Hughes. It provides meaningful monetary relief to the Plaintiffs and eliminates the inherent risks each side would bear if this complex litigation continued to resolution by a jury—an issue that, to the parties' knowledge–no jury has previously decided. The settlement amount further considers NFG's financial disclosures.

Courts typically rely on the adversarial nature of a litigated FLSA case resulting in settlement as *indicia* of fairness. *See Lynn's*, 679 F.2d at 1354. The settlement creates a Settlement Amount (fund) that will be paid to the Named Plaintiff and opt-in Plaintiffs. Distributions from the Settlement Fund will be allocated to opt-in Plaintiffs based on an equitable formula considering the total number of deliveries each of them performed, miles driven, and the

amounts previously reimbursed by NFG. (Ex. 1, ¶2.1(B)). The amount of the Settlement Fund falls well between the maximum amount Plaintiffs might have recovered if they prevailed on every claim, and nothing, the amount they would have recovered if NFG prevailed instead. Thus, the settlement represents a fair and reasonable compromise.

Notably, in evaluating the parties' proposed compromise, the Court need not reach its own conclusions as to the expected value of litigating the claims through trial and appeal:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. … Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Grewe*, 2016 WL 4014114, at *3 (citing *Officers for Justice* and *Rodriguez v. West Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) and recognizing that "the Ninth Circuit rejects the argument that a court must specifically weigh the merits of the class's claim against the settlement amount and quantify the expected value of fully litigating the matter.") (internal citations and alterations omitted).

To determine whether settlement terms are fair and equitable to all parties, courts consider a multitude of factors, including: (1) the settlement negotiations between the parties, (2) the settlement amount to be paid to the plaintiffs, (3) the individual settlement amounts to each person, (4) the litigation risks, and (5) the scope of the release. *See Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11); *Goudie v. Cable Comm'ns, Inc.*, 2009 WL 88336, at *1 (D. Or. Jan. 12). Put in slightly different terms, "[th]e Court considers factors such as the risk, expense, complexity, and likely duration of litigation; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; and the reaction

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106

of putative members to the proposed settlement." *Grewe*, 2016 WL 4014114, at *1. These factors show this settlement to be fair and reasonable. Finally, "where the Court evaluates an FLSA collective action settlement, the standard is less exacting than when evaluating a Rule 23 class action settlement. This is because Rule 23 settlements bind all class members except those who affirmatively opt out, thus presenting the risk that a settlement will unknowingly bind individuals. In contrast, an FLSA settlement binds only those who affirmatively opt in." *Grewe*, 2016 WL 4014114, at *4 (internal citations omitted).

**A. Factor 1: The Settlement Is the Result of Arm's Length Negotiations.**

Prior to negotiations, NFG produced voluminous payroll, delivery and reimbursement data consisting of each opt-in Plaintiff's number of deliveries, mileage driven, and reimbursements. This allowed for a detailed analysis of Plaintiffs' claims and quantification of potential damages to each of the 435 opt-in Plaintiffs. (Ex. 2, Declaration of Mark Potashnick, ¶7). The parties were only able to achieve a settlement after a full day of contentious mediation, followed by subsequent negotiations conducted through the mediator. (Ex. 2, ¶10). Moreover, both sides were represented by counsel experienced in wage and hour litigation generally, and in litigating similar cases specifically. Plaintiffs' counsel have represented employees in FLSA claims, and particularly, in dozens of similar delivery driver reimbursement cases around the nation. (Ex. 2, ¶¶ 4-5). Indeed, it may be fairly said that Plaintiffs' counsel pioneered pizza delivery driver FLSA cases. Likewise, NFG's counsel has defended numerous FLSA actions, including many pizza delivery driver cases. Thus, the settlement is clearly the product of informed arm's-length negotiations. *See Rodriguez*, 563 F.3d at 965 (the court should "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (an arms-length settlement after hours of negotiations with a third-party neutral is "highly indicative of fairness").

**B. Factors 2 and 3: Plaintiffs' Recovery Is Fair and Reasonable.**

The Settlement Agreement provides for individual checks to each of the 435 Plaintiffs in

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106

specified amounts that will provide them with the equivalent of an increased reimbursement rate for each delivery made in exchange for a release of their wage and hour claims under state and federal law. Thus, the parties negotiated a limited, not general, release. The settlement was reached by negotiating a reimbursement rate between the IRS rate, which was Plaintiffs' position, and the rate paid by Defendants, with neither side conceding that such a compromise rate is reasonable or proper. While many Plaintiffs will receive much more, every Plaintiff will receive at least $25.00. Equitably, Plaintiffs who made more deliveries will receive larger amounts than those Plaintiffs who made fewer deliveries. *See Ambrosino*, 2014 WL 3924609, at *2 (use of individual wage and hour data supports reasonableness of settlement). However, every Plaintiff's settlement considers NFG's financial status, as substantiated by NFG's disclosure of financial statements at mediation. (Ex. 2, ¶8). And, Plaintiffs' Counsel provided notice to all opt-in Plaintiffs of the total amount of the settlement and an approximation of their ultimate share of the recovery. After just one opt-in Plaintiff initially objected and withdrew that objection, no Plaintiffs are objecting to the settlement. (Ex. 2, ¶11-12).

For rough comparison purposes, Plaintiffs estimated that their best possible recovery of actual damages, including third-year damages, was approximately $1.7 Million, or an average of about $3,900.00 per Plaintiff. The settlement provides an average recovery of about $1,034.00 per Plaintiff, or 27% of the maximum possible recovery of actual damages. This level of recovery, particularly considering NFG's financial disclosures, supports the settlement. *See, e.g.*, *Deaver v. Compass Bank*, 2015 WL 8526982, *7 (N.D. Cal. Dec. 11) (recovery equal to 10.7% of total potential liability exposure reasonable).

## C. Factor 4: The Litigation Risks Are Significant.

The risks that existed for both sides if litigation continued were significant. *See Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results"). If the litigation were to continue, Plaintiffs would likely face a motion to decertify the collective action and a dispositive motion. And, if Plaintiffs survived

those challenges, they would still face a jury trial. Further, the ultimate fact question—what constitutes a "reasonable" reimbursement—would be the subject of competing expert testimony. The jury's determination of that question would decide liability and damages. The amount of damages, if any, could vary greatly depending on the reasonable reimbursement rate determined by the jury. Further, whether a jury would find any violation willful to extend the limitations period to the third year is also unknown. Notably, regardless of the merits, NFG's financial disclosures indicated that a verdict substantially greater than the settlement amount would likely prove uncollectable. Thus, success on the merits is far from assured, and this factor strongly supports approval of the settlement.

**D. The Scope of the Release Is Commensurate with the Claims Asserted.**

The releases provided by the opt-in Plaintiffs are appropriately limited to wage and hour claims that were or could have been brought in the litigation, and only those opt-in Plaintiffs who accept their settlement payment will be bound by the release. (Ex. 1, ¶3.1(A)). Accordingly, NFG has not overreached with respect to the terms of the settlement. *See Ambrosino*, 2014 WL 3924609, at *2 (a proper release tracks the breadth of the allegations). Only the Named Plaintiff and two other opt-in Plaintiffs who have expressly indicated their intent to assert different claims under California law will provide a general release. In exchange, the Named Plaintiff will receive a modest service award (Ex. 1, ¶3.1(B)) and those two other Plaintiffs, Conrado Diaz Jr. and Jimmie Jones, will receive extra and separate consideration for signing full releases. *See* Ex. 1.

Based on each of these factors, the Court should approve the settlement because the record demonstrates the settlement is a fair and reasonable compromise of a *bona fide* dispute.

**E. Reaction of the Opt-In Plaintiffs**

Plaintiffs' counsel provided written notice of the settlement to all opt-in Plaintiffs on November 19, 2018. The notice included all material terms, including each opt-in Plaintiff's estimated net distribution amount. (Ex. 2, ¶11). Plaintiff's counsel received just one objection to the settlement, which was due to a data error, and after being corrected that Plaintiff withdrew

his objection.

### III.   The Named Plaintiff's Service Award Is Reasonable

The Settlement Agreement provides for a reasonable service award of $3,000.00 to the Named Plaintiff. (Ex. 1, ¶2.1(C)). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for same reasons as in Rule 23 class actions); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits").

Factors bearing on the decision of whether to grant a service award include, as relevant here, the actions taken by the named plaintiff to protect the interests of all other opt-in plaintiffs, the degree to which the opt-in plaintiffs have benefited from those actions, and the amount of time and effort the named plaintiff expended on the litigation. *Staton v Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the Named Plaintiff substantially assisted counsel in achieving this settlement on behalf of all of the opt-in Plaintiffs. He first sought and obtained counsel with specific experience in minimum wage/vehicle reimbursement claims and initiated this action. He provided ongoing guidance to counsel. He endeavored to protect the interests of all of the opt-in Plaintiffs and to obtain a substantial recovery on their behalf. He participated throughout the day-long mediation and subsequent settlement efforts, and vigorously negotiated on behalf of all 435 opt-in Plaintiffs. (Ex. 2, ¶14). The other opt-in Plaintiffs have substantially benefitted from the Named Plaintiff's efforts. In light of these efforts, a modest service award is justified. The award also falls well within the range of other service awards typically approved by courts in this Circuit. *E.g.*, *Staton*, 327 F.3d at 977 (noting the Ninth Circuit's previous approval of service awards of $5,000 to named plaintiffs and collecting other cases); *Nen Thio*, 14 F. Supp.

3d at 1335 (approving $5,000 service awards to named plaintiffs); *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, at 1181 (S.D. Cal. 2016) (same); *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6) (noting that a $5,000.00 service award is "presumptively reasonable" and supported by ample case law and granting the named plaintiff a $12,500.00 award). NFG does not oppose the service award.

The notice of settlement sent to all opt-in Plaintiffs specifically informed them of the proposed service award to the named Plaintiff and no opt-in Plaintiff objected to that award. (Ex. 2, ¶11).

Importantly, Mr. Kirkwood will give a general release as additional consideration for a service award, which is another reason the award should be approved. *See Ruiz v. JCP Logistics, Inc.*, 2016 WL 6156212, at *11 (C.D. Cal. Aug. 12) (broader release justifies service award).

Accordingly, the Court should grant final approval of Plaintiffs' service award request.

## IV.  Plaintiffs' Counsels' Fee Recovery Is Reasonable

The Settlement Agreement provides that Plaintiffs' counsel will recover their fees from the Settlement Amount. (Ex. 1, ¶2.1(D)). The FLSA requires the Court to allow a reasonable attorney's fee to be paid by the defendant. 29 U.S.C. § 216(b). As various courts have observed, the theory behind attorneys' fee awards in representative actions is that "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Natl. Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (cited with approval in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In other words, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Rodriguez v. Disner*, 688

F.3d 645, 653 (9th Cir. 2012).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Yue Zhou v. Wang's Restaurant*, 2007 WL 2298046, *1 (N.D. Cal. Aug. 8) ("Because a court supervised settlement of FLSA overtime claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is mandatory."). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Campbell v. C.R. England, Inc.*, 2015 WL 5773709, at *6 (D. Utah Sept. 30).

The settlement agreement authorizes a fee award of one-third (1/3) of the total settlement amount. Each opt-in Plaintiff was specifically advised of this fee percentage, and no Plaintiff objected thereto. This lack of objections weighs in favor of approving the instant fee request. Ex. 2, ¶11; *see Ambrosino*, 2014 WL 3924609, at *2 (finding 33.3% attorneys' fees reasonable in a FLSA settlement where each plaintiff approved this amount). Other courts in this Circuit have approved the same percentage in other cases involving the same claims. *See, e.g., Armes v. Hot Pizzas, LLC*, Case No. CV-16-01152-PHX-JJT (D. Ariz. Jun. 9, 2017) (Ex. 4); *Larson v. Desert Sun Pizza, LLC*, Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) (Ex. 5).

The Ninth Circuit has recognized a loose benchmark of 25% in Rule 23 class actions involving passive plaintiffs, though courts have recognized that most percentage fee awards exceed the benchmark. *See, e.g., Syed v. M-1, LLC*, 2017 WL 3190341, *8 (E.D. Cal. July 27) (awarding fees of 1/3 of FLSA/Rule 23 settlement fund); *Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822, at *11 (C.D. Cal. July 14) (awarding 30% fee); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (33% fee awarded); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, *3 (N.D. Cal. Feb. 6) (awarding 1/3 fee, citing cases); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (33.3% fee awarded); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, *3 (N.D. Cal. Feb. 2) (same). Indeed, in "most common fund cases, the award exceeds that benchmark." *Vasquez*, 266 F.R.D. at 491 (internal quotation marks omitted).

Here, the Named Plaintiff agreed to pay 35% of any collective action settlement as a fee,

given the relatively small size of the case. In turn, the opt-ins authorized the Named Plaintiff to negotiate and agree to the 35% rate. *See, e.g.,* Doc. 19-1 (consent to join form of Bennie Wright providing that the named plaintiff may "make all decisions on my behalf concerning the method and manner of conducting the case including ... the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs..."). However, Plaintiffs' Counsel voluntarily agreed to reduce that fee to one-third as part of the settlement

To ensure a fee award is reasonable, this Circuit applies "the *Kerr* factors," to cross-check the ultimate reasonableness of an attorneys' fee award: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;[2] (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 n.7 (9th Cir. 2011) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975)).

### A. *Kerr* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.

Minimum wage lawsuits based on under-reimbursed expenses were extremely rare before Plaintiffs' counsel's efforts on behalf of pizza delivery drivers. Previous cases prosecuted by Plaintiffs' counsel provided significant and novel challenges, and ultimately yielded favorable decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim" and "[t]he present case does not involve a straightforward claim under the FLSA for unpaid amounts")). *See, e.g., Wass*, 688 F.Supp.2d at

---

[2] This factor is no longer a valid factor. *In re Bluetooth*, 654 F.3d at 942 n.7.

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106

1286 ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim."; "The present case does not involve a straightforward claim under the FLSA for unpaid amounts; rather, … [t]his case… demands a greater degree of specificity in pleading" than other FLSA cases.)).

Under the defendants' threats of seeking sanctions in both the *NPC case* and *Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) if their theory proved incorrect, Plaintiffs' Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *See id*. These rulings paved the way for conditional certification of the FLSA claims here, and ultimately this settlement.

Recently, the U.S. District Court for the District of Maryland recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.
>
> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

*Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368 (D. Md. Dec. 19); *see also, e.g., Jimenez v. Pizzerias*, LLC, 2017 U.S. Dist. LEXIS 129820, *13-14 (S.D. Fla. Aug. 14) ("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

The fact that rulings from other courts – obtained by Plaintiffs' Counsel - helped them obtain early resolution of this case does not minimize the risk here. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). While these prior decisions bolstered Plaintiffs' position, no court of appeals has addressed these issues. Similarly, no other pizza delivery

driver case has been submitted to a jury, leaving the ultimate resolution as a critical unknown. Trial would be expert-intensive and costly. Plaintiffs would need to provide documentary evidence, lay testimony, and expensive expert testimony to establish liability and damages for all Plaintiffs. Further, regardless of the outcome at trial, post-judgment appeals would be likely.

Additionally, Plaintiffs' counsel possess extensive experience in all types of wage and hour litigation. (Ex. 2, ¶¶ 3-6). In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiffs' attorneys, and "undesirability" of the case, *Kerr* factors (2), (3), (9) and (10) all strongly support Plaintiffs' counsels' requested fee.

## B.  *Kerr* **Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.**

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord In re Bluetooth*, 654 F.3d at 942. As noted above, given the novelty and difficulty of cases involving minimum wage laws vis-à-vis reimbursable expenses, Plaintiffs' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the parties following contentious mediation and subsequent negotiations is a very successful result for Plaintiffs, especially considering NFG's financial disclosures at mediation. The total settlement amount is the result of good faith, but contentious arm's-length negotiation and represents an excellent result for the opt-ins in this case. Some opt-ins will receive substantial payments for their alleged unreimbursed vehicle expense. And while some opt-ins will receive less than others – based on relatively fewer miles driven within the applicable recovery period – no opt-in will receive less than $25.00.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiffs' Counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the Named Plaintiff signed a contingency fee agreement with Plaintiffs' Counsel agreeing to fees equaling 35% of the common fund. However, Plaintiffs' Counsel cut their percentage to one-third in an effort to resolve this case and increase the amount paid to plaintiffs.

**C.** *Kerr* **Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.**

Plaintiffs' counsel's firms combined spent over 311 hours litigating this case with no assurance of any recovery at all. (Ex. 2, ¶16; Ex. 3, Declaration of Richard Paul, ¶10). This includes time spent investigating the facts, preparing and filing pleadings, reviewing documents produced by the Named Plaintiff, the opt-in Plaintiffs, and by NFG, responding to inquiries by numerous opt-in Plaintiffs, analyzing NFG's payroll, delivery, and reimbursement data, communicating with the Named Plaintiff Kirkwood and opt-in Plaintiffs, creating computerized damages models, researching and drafting a Mediation Statement, participating in the mediation, negotiating the terms of the settlement, drafting approval papers, and seeking Court approval of the settlement. (Ex. 2, ¶16; Ex. 3, ¶10).

| Name/Title | Time | Rate | Fees |
|---|---|---|---|
| Rick Paul | 48.6 | $600 | $29,160.00 |
| Mark Potashnick | 47.5 | $450 | $21,375.00 |
| Sean Cooper | 10.9 | $300 | $3,270.00 |
| Patrick Neal | 123.7 | $120 | $14,844.00 |
| Kendra John | 36 | $130 | $4,680.00 |
| Linda Davis | 31.4 | $130 | $4,082.00 |
| Caroline Abbott | 8.9 | $85 | $756.50 |
| Jordan Cowger | 4.5 | $85 | $382.50 |
| **TOTAL** | | | $78,550.00 |

Plaintiffs' Counsel's lodestar is based on their standard hourly billing rates for work of this type. (Ex. 2, ¶16; Ex. 3, ¶11). These rates have been approved as reasonable in numerous wage-and-hour cases, and courts in this Circuit frequently approve even higher hourly rates. *See, e.g.,* *Thomas v. Kellogg Co.*, Case No. 3:13-cv-05136-RBL (W.D. Wash.) (Dkt. 537, p. 25; noting rates as high as $800/hr. in wage-and-hour collective action); *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal. 2017) (approving hourly rates ranging from $300.00 to $900.00);

*Velazquez v. Int'l Marine and Indus. Applicators, LLC*, 2018 WL 828199, *9 (S.D. Cal. Feb. 9) (approving fee award; lodestar cross-check at hourly rate up to $800.00); *Bickley v. CenturyLink, Inc.*, 2016 WL 9046911, *5 (C.D. Cal. Nov. 29) (approving hourly rates of $650.00-$750.00 in misclassification / overtime case). And, while the lodestar cross-check reflects a multiplier of 1.90, such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Accordingly, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4, or even higher. *See id.* (approving multiplier of 3.65). Finally, the lack of any objections to Plaintiffs' counsel's fees after providing notice to the opt-in Plaintiffs lends further support to Counsel's fee request. *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008).

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiffs' counsel will be required to expend significant additional time administering the settlement, which requires distributing individual recoveries and communicating with individual Plaintiffs.

**D.** ***Kerr* Factor (12): Awards in Similar Cases.**

Courts in this Circuit routinely recognize that as the size of the common fund recovery decreases, the percentage to which the plaintiffs' counsel is entitled increases, and common funds under $10 Million often result in awards between 30 and 50%. *See, e.g., Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, at 1123-27 (C.D. Cal. 2008) (noting Silber and Goodrich's conclusion "that a 33% fee award is both reasonable, and in line with the general market for contingent fee work"); *Barbosa*, 297 F.R.D. 431, at 451 (33% of the class recovery is reasonable and approved based on the risk of litigation, fee awards in other wage-and-hour cases); *Bautista*, 2014 WL 12579822 at *14 (approving one-third as attorneys' fees). Further, because the common fund is a relatively low fund, a 33% recovery is fair and commonplace for contingent fee work. *See Van Vranken v. A. Richfield Co.*, 901 F.Supp. 294, 297 (N.D. Cal. 1995) (funds under the $10

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106

million mark are considered smaller, justifying a higher percentage attorney's fee). As such, Plaintiffs' counsels' fee recovery in this case is more than reasonable.

Notably, Plaintiffs' counsel's fees equal to one-third of the total recovery have been approved within this Circuit in the same claims against other pizza delivery companies. *Armes* (Ex. 4); *Larson* (Ex. 5).

## V.    Plaintiffs' Counsels' Cost Recovery Is Reasonable

The FLSA requires the Court to 'allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *Goodwin v. Citywide Home Loans, Inc.*, 2015 WL 12868143, at *4 (C.D. Cal. Nov. 2). The instant Settlement Agreement provides that costs advanced by Plaintiffs' counsel, not to exceed $12,000, will also be paid out of the Settlement Amount. (Ex. 1, ¶2.1(E)). Plaintiffs' counsel incurred over $12,000 in expenses in the course of this litigation with no assurance of repayment. Because expenses were incurred without any guarantee of reimbursement, Plaintiffs' counsel had a strong incentive to keep them reasonable. In fact, because the negotiated expense cap in the Settlement Agreement limits the recovery of expenses to $12,000, Plaintiffs' Counsel will not recoup all of their expenses. The expenses for which they seek reimbursement are the type of costs and expenses normally incurred in such litigation and normally charged to hourly-paying clients. (Ex. 2, ¶17; Ex. 3, ¶12). NFG does not oppose Plaintiffs' counsels' recovery of costs from the Settlement Amount.

### CONCLUSION

This settlement constitutes a fair and reasonable resolution of a bona fide dispute between the parties under the FLSA. Both sides thoroughly investigated and analyzed the facts and law, carefully considered the risks and costs associated with continued ligation, and, with the capable assistance of Hunter Hughes, negotiated a reasonable settlement in good faith. For the reasons set forth above, the parties respectfully request that the Court approve the settlement.

JOINT MOTION FOR
APPROVAL OF SETTLEMENT

PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106

1    Dated: January 11, 2019                    Respectfully submitted,

2    **Phillips Law Firm PLLC**                 **Fisher & Phillips LLP**
     Jason Murphy                               _/s/ Kathleen McLeod Caminiti_
3    17410 133rd Ave NE, Suite 301              Kathleen McLeod Caminiti
     Woodinville, Washington 98072              430 Mountain Avenue, Suite 303
4    Telephone: (425) 482-1111                  Murray Hill, New Jersey 07974
     JMurphy@justiceforyou.com                  Telephone: (908) 516-1062
5                                               Facsimile: (908) 516-1101
                                                E-Mail: kcaminiti@fisherphillips.com
6    **Paul LLP**
     _/s/ Richard M. Paul III_
7    Richard M. Paul III                        **Fisher & Phillips LLP**
     601 Walnut Street, Suite 300               Catharine M. Morisset, WSBA #29682
8    Kansas City, Missouri 64106                1201 Third Avenue, Suite 2750
     Telephone:  (816) 984-8100                 Seattle, Washington 98101
9    Rick@PaulLLP.com                           Telephone: (206) 682-2308
                                                Facsimile: (206) 682-7908
10   **WEINHAUS & POTASHNICK**                  E-Mail: cmorisset@fisherphillips.com
     Mark A. Potashnick
11   11500 Olive Boulevard, Suite 133           **ATTORNEYS FOR DEFENDANTS**
     St. Louis, Missouri 63141
12   Telephone:  (314) 997-9150
     markp@wp-attorneys.com
13
     **ATTORNEYS FOR PLAINTIFFS**
14

15

16                                 **CERTIFICATE OF SERVICE**

17

18   I hereby certify that on the January 11, 2019, I electronically transmitted the foregoing

19   document to the Clerk's Office using the CM/ECF System for filing which transmitted a Notice

20   of Electronic Filing to all parties of record.

21

22                                                 _/s/ Richard M. Paul III_____

23

24

25

26

27

28

JOINT MOTION FOR                                                    Paul LLP
APPROVAL OF SETTLEMENT                                              601 Walnut Street, Suite 300
                                                                    Kansas City, Missouri 64106