# EXHIBIT 1

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and between named Plaintiff Gary Kirkwood (the "Named Plaintiff"), on behalf of himself and the Opt-In Plaintiffs (as herein defined), on the one hand, and Defendants Noble Food Group, Inc., NFG Chicago, LLC, NFG Portland, LLC, NFG Salem, LLC, NFG San Francisco, LLC and NFG Seattle, LLC, (collectively "Defendants"), on the other.

### RECITALS

WHEREAS, the Named Plaintiff filed a Complaint against Defendants in the U.S. District Court for the Western District of Washington entitled *Gary Kirkwood, on behalf of himself and others similarly situated persons v. Noble Food Group, Inc., NFG Chicago, LLC, NFG Portland, LLC, NFG Salem, LLC, NFG San Francisco, LLC and NFG Seattle, LLC*, Civil Action No. 2:18-cv-00360; and

WHEREAS, the Complaint asserted Rule 23 class action claims under the Washington Minimum Wage Act, Chapter 49.46 RCW ("WMWA") and collective action claims under the Fair Labor Standards Act ("FLSA"); and

WHEREAS, to facilitate potential resolution of the claims, Defendants consented to conditional collective action certification of the FLSA claims, and the Named Plaintiff dismissed the Rule 23 state law claims based on Defendants' agreement to negotiate settlement using the applicable state's higher minimum wage rate; and

WHEREAS, the Amended Complaint asserted a collective action claim under the Fair Labor Standards Act ("FLSA"), and sought recovery of unpaid vehicle expenses (which the Named Plaintiff alleged reduced net wages below the federal minimum wage), liquidated damages, interest, and attorneys' fees and costs on behalf of current and former delivery drivers who have been employed at Defendants' stores during times relevant; and

WHEREAS, Defendants deny and continue to deny Plaintiffs' allegations in the Litigation and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or cause of action asserted in the Litigation. Nonetheless, without admitting or conceding liability, wrongdoing, or damages, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden and expense of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel have vigorously litigated this case, have analyzed delivery and expense reimbursement data produced by Defendants, and have interviewed numerous current and former delivery drivers regarding the Named Plaintiff's claims; and

WHEREAS, Plaintiffs' Counsel have thoroughly analyzed and evaluated the merits of the claims against Defendants, the merits of Defendants' responses to those claims and their potential defenses, the potential damages to be recovered at a trial, and the impact of this Agreement on the Named Plaintiff and the Opt-In Plaintiffs; and

WHEREAS, based on their analysis and evaluation of relevant factors, and recognizing the risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in no recovery whatsoever for the Opt-In Plaintiffs, might result in a recovery less favorable to the Opt-In Plaintiffs, might result in a recovery more favorable to the Opt-In Plaintiffs, and the likelihood that any recovery for any portion of the damages claimed would not occur for several years, counsel for the Parties are satisfied that the terms and conditions of the Agreement are fair, reasonable, and adequate, and Plaintiffs' Counsel is satisfied that this Agreement is in the best interest of the Opt-In Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions, subject to Court approval of the settlement and dismissal of the Litigation with prejudice:

## 1.    DEFINITIONS

The terms set forth herein shall have the meanings ascribed to them below.

"**Complaint**" means the most recent Complaint on file in the Litigation.

"**Claims Administrator**" means RG2 Claims Administration, LLC.

"**Defendants**" means Noble Food Group, Inc., NFG Chicago, LLC, NFG Portland, LLC, NFG Salem, LLC, NFG San Francisco, LLC, and NFG Seattle, LLC, and their related entities.

"**Defendants' Counsel**" means Fisher Phillips LLP.

"**Litigation**" means *Gary Kirkwood, individually and on behalf of similarly situated persons v. Noble Food Group, et al.*, pending before the U.S. District Court for the Western District of Washington, Civil Action No.  2:18-CV-00630.

"**Named Plaintiff**" means Gary Kirkwood and includes any and all of his representatives, administrators, heirs, executors, beneficiaries, agents, attorneys, and assigns, as applicable and without limitation.

"**Opt-In Plaintiffs**" means all persons who have filed a consent to join form in the Litigation on or before October 30, 2018, including the Named Plaintiff and up to five (5) additional persons who file a later consent to join form after mediation and prior to the Court's Final Approval of the Settlement.

"**Parties**" means the Named Plaintiff, the Opt-In Plaintiffs, and Defendants.

"**Plaintiffs' Counsel**" means Rick Paul of Paul LLP, Mark Potashnick of Weinhaus & Potashnick and Jason Murphy of Phillips Law Firm, LLC.

"**Released Parties**" means Noble Food Group, Inc., NFG Chicago, LLC, NFG Portland, LLC, NFG Salem, LLC, NFG San Francisco, LLC and NFG Seattle, LLC and the related entities, along with their respective owners, members, stockholders, franchisors, including Domino's Pizza LLC (and its related entities), predecessors, successors, assigns, agents, directors, officers, employees,

representatives, attorneys, parent companies, divisions, insurers, subsidiaries, affiliates, and all persons acting by, through, under or in concert with them.

"**Settlement Amount**" means the total payments required of Defendants under this Agreement in the amount of Four Hundred Fifty Thousand Dollars ($450,000.00), which shall be distributed per the terms of this Agreement, subject to approval by the Court.

## 2.   SETTLEMENT TERMS

### 2.1   Settlement Payments.

(A) Defendants agree to pay the Settlement Amount to fully and finally resolve and satisfy any and all claims by the Named Plaintiff and the Opt-In Plaintiffs asserted in the Litigation, inclusive of attorney's fees, costs and service awards, and releases per Sections 3.1 and 3.2 below. Said total payment amount shall be distributed as follows:

(B) After deductions provided in Sections 2.1(C) through (F) below, all remaining funds shall be distributed to the Opt-In Plaintiffs on a pro-rata basis according to an equitable formula determined by Plaintiffs' Counsel based primarily on the total number of miles driven by each Opt-In Plaintiff and the reimbursements they received from Defendants. However, no Plaintiff shall receive less than $25.00. Within five (5) business days of the Court's Order approving the Settlement, Plaintiffs' Counsel will email the Claims Administrator and Defendants' Counsel a spreadsheet containing the breakdown of the settlement distribution. Within ten (10) business days after receiving said spreadsheet, Defendants will provide the Claims Administrator the Settlement Amount. Within five (5) business days of the Effective Date of the Settlement, the Claims Administrator will mail (1) a check to Plaintiffs' Counsel for the total amount of Attorneys' Fees and Costs approved by the Court; (2) a check for each Opt-In Plaintiff in the amount specified in said spreadsheet; and (3) a check to Named-Plaintiff in the amount of the $3,000.00 (or such other amount award by the Court). If any payments to Opt-In Plaintiffs are returned by the postal service as undeliverable, Defendants and Plaintiffs' Counsel will provide the Claims Administrator any personally identifiable information of such Opt-In Plaintiffs that Defendants or Plaintiffs' Counsel have in their possession to assist in their search for a more recent address so that the payments can be promptly re-mailed to the correct address. If any Opt-In Plaintiff fails to cash their check within one hundred eighty (180) days after the date of the check, the Claims Administrator will deliver the monies to Domino's Partner's Foundation.

(C) Three Thousand Dollars and 00/100 ($3,000.00) shall be distributed to the Named Plaintiff as a service award in recognition of, and in consideration for, the substantial assistance he rendered to Plaintiffs' Counsel and to the Litigation in pursuing the rights of all Opt-In Plaintiffs provided that he signs a Supplemental Settlement Agreement, which shall include a general release and covenant not to sue. A form of the Supplemental Settlement Agreement is attached as Exhibit A.

(D) One Hundred and Fifty Thousand Dollars and 00/100 ($150,000.00) shall be distributed to Plaintiffs' Counsel as attorney's fees, which is equivalent to 1/3 of the Settlement Amount. Defendants agree not to contest Plaintiffs' Counsel's fee application. In the event the Court reduces Plaintiffs' Counsel's fee request, the amount of the reduction shall be re-allocated to the Opt-In Plaintiffs.

(E) An amount not to exceed Twelve Thousand Dollars and No Cents ($12,000.00) shall be distributed to Plaintiffs' Counsel as and for their out-of-pocket costs incurred in pursuing the Litigation.

(F) An amount not to exceed Five Thousand One Hundred Dollars and 00/100 Dollars ($5,100.00) shall be paid to the Claims Administrator as and for its claims administration services in connection with the settlement of Litigation and distribution of the payments set forth herein.

(G) All payments set forth in this Section 2.1 are subject to Court approval of the settlement and dismissal of the lawsuit with prejudice upon submission of an appropriate motion by Plaintiffs' Counsel. Defendants agree not to oppose that motion.

**2.2    Nature of Payments / Taxation of Settlement Disbursements.**

(A) The Parties agree that, for tax purposes, all funds distributed to Opt-In Plaintiffs under Section 2.1(B) above shall be treated as reimbursement of self-paid business expenses related to the use of their vehicles, and therefore no taxes shall be withheld from such payments. Also, all payments made to Opt-In Plaintiffs in resolution of their claims in this Litigation will not be considered for purposes of calculating, or recalculating, benefits provided by Defendants under the terms or conditions of any benefits plan.

(B) The Parties agree that, for tax purposes, the service award to the Named Plaintiff under Section 2.1(C) above shall be treated as non-employee income and Defendants shall issue Gary Kirkwood an IRS Form 1099 in the amount of his service award.

(C) Opt-In Plaintiffs shall be solely and exclusively responsible for all taxes, interest and penalties, if any, of any nature, owed with respect to any payment received by them under this Agreement and will indemnify and hold Defendants and Plaintiffs' Counsel harmless from and against any and all taxes, penalties, and interest of any nature assessed as a result of an Opt-In Plaintiff's failure to timely and properly pay such taxes.

**3.    RELEASE**

**3.1    Release of Claims.**

(A) **Opt-In Plaintiffs:** Each Opt-In Plaintiff releases all claims accrued through the date of this Agreement that were or could have been made against the Released Parties in this Litigation, or similar wage-based claims based on the same facts alleged in the Complaint, including all claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., including

the state and local wage and hour laws of California,[1] Washington, Oregon,[2] and Illinois,[3] (including but not limited to Washington's Minimum Wage Act, Chapter 49.46 RCW, 49.52.050 and RCW 49.52.070) whether known or unknown, including but not limited to any and all claims arising out of any federal or state wage or minimum wage laws; any and all claims for breach of contract; any and all claims for unpaid or underpaid employee expense reimbursement; any and all claims for unjust enrichment; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Released Parties. The Claims Administrator will include in the envelope containing the check to each Opt-In Plaintiff the language of this release provision along with an explanation that each Opt-In Plaintiff is bound by the terms of this Agreement, and specify the Release of Claims provision set forth in this Section.  The Claims Administrator will print release language on the back of the check in a form approved by Plaintiffs' and Defendants' Counsel.

(B) **Named Plaintiff:** The Named Plaintiff and Defendants forever and fully release the other from all claims or demands each has or may have against the other accrued through the date of execution of this Agreement.  The Named Plaintiff shall sign a separate general release agreement in the form attached as an Exhibit A hereto.

3.2    **Release of Fees and Costs.** Plaintiffs' Counsel and the Named Plaintiff, on behalf of the Opt-In Plaintiffs, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they have or may have against Defendants for attorneys' fees, costs, or expenses associated with this Litigation, including but not limited to those attorneys' fees, costs, or expenses associated with Plaintiffs' Counsel's representation of the Named Plaintiff and the Opt-In Plaintiffs in this Litigation. Plaintiffs' Counsel further understand and agree that any fee and costs payments provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Plaintiffs' Counsel's representation of these persons in this Litigation.

3.3    **No Assignment.** The Named Plaintiff, on behalf of the Opt-In Plaintiffs, represents and warrants that he has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation.

3.4    **Non-Admission of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiff and/or the Opt-In Plaintiffs, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for collective action litigation other than for purposes of settlement. Settlement of the Litigation and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations in any and all Complaints filed

[1] Including, but not limited to Cal. Labor Code § § 2802; 1194; 1194.2; 1197; 1197.10; IWC Minimum Wage Order & Wage Order No. 5.
[2] Including, but not limited to ORS 652.150 *et seq.*
[3] Including, but not limited to 820 ILC § 115 *et seq.*

in the Litigation; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c), are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement and any exhibit hereto are settlement documents and shall be inadmissible in any proceeding for any reason.

3.5     **Court Approval.**  Within 14 days of a full execution of this Agreement, the Named Plaintiff will file a motion for final approval of the settlement by the Federal Court.  The parties agree to continue the current stay of the proceedings in the Litigation, pending final approval of the settlement. ("Date of Final Approval").

## 4.     NON-DISCLOSURE AND PUBLICITY

4.1     Prior to submission of the Agreement to the Court for final approval, the Parties and their counsel will keep the terms, conditions, and existence of the settlement and this Agreement strictly confidential, and will not contact, or comment to, the media about the settlement or this Agreement, or disclose, make known, discuss, or relay orally or in writing, electronically or otherwise, the existence or terms of the settlement or this Agreement, or any information concerning or discussions leading up to the settlement or this Agreement.  After submission to the Court of the Motion for Approval, neither Named Plaintiff or Defendants, nor counsel to any Party, may make any public comment, make or have any communications to or with the press or media, or make any form of advertising or public announcement, utilize any form of social media or website, or issue any press release or media release, regarding the terms of this Agreement, except that Counsel may state that a settlement has been reached and the settlement amount.  Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings a summary of the terms of this Agreement. Nothing in this paragraph prohibits Plaintiffs' Counsel from communicating with their clients. Further, nothing in this paragraph prohibits Plaintiffs' Counsel from disclosing their representation in this matter in fee applications, websites, firm bios or individual bios.

4.2     Nothing in this Agreement shall prohibit Counsel for the Parties from disclosing information concerning this Agreement, to their employees, or their agents to effectuate the terms of this Agreement.  Moreover, nothing in this Agreement shall prohibit Defendants from disclosing information concerning this Agreement to their employees or agents to the extent necessary to effectuate the terms of this Agreement or to other individuals who otherwise have a need to know the terms of this Agreement.  The Parties may also disclose information concerning this Agreement to their respective counsel and tax, audit, and legal advisors.

4.3     Nothing in this Agreement shall prevent Defendants or Defendants' Counsel from making any necessary, appropriate, or required disclosures to Defendants' regulators, auditors, bankers, and the like, or from complying with their obligations under the law.

4.4      Plaintiffs' Counsel will promptly notify Defendants' Counsel of any third-party legal demand that they disclose information pertinent to the settlement or this Agreement.

**5.      MISCELLANEOUS**

5.1      **Cooperation Between and Among the Parties; Further Acts.** The Parties shall cooperate fully with each other in a prompt and timely manner and shall take all necessary steps to effectuate this Agreement.

5.2      **Effect of Failure to Grant Approval.** In the event the Court fails to enter an order approving settlement in accordance with this Agreement (except for a modification of the attorneys' fees or Service Award) the Parties shall proceed as follows:

a.      The Lawsuit will resume unless the Parties jointly agree to: (a) seek reconsideration or appellate review of the decision denying approval of settlement, or (b) attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement.

b.      In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement.

5.3      **Entire Agreement.** This Agreement including any exhibits constitutes the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4      **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length with the assistance of an experienced mediator, Hunter Hughes. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied on by the Parties in entering into this Agreement. The Parties have been represented and assisted by counsel through the negotiation and drafting of this Agreement.

5.5      **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Agreement.

5.6      **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.7      **Costs.** Except as otherwise provided herein, all Parties shall bear their own costs, expenses and attorneys' fees relating to this Agreement and the Litigation.

5.8      **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment. A failure by any party to insist on the strict performance by the other party of

**5.10   Signatures, Transmittals, Electronic Copies and Facsimiles.** Once a party has executed this Agreement, that signature page may be transmitted by email or facsimile to counsel for the other party. Any signature made and transmitted by email or facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding on the party whose counsel transmits the signature page by email or facsimile.

**5.11   Authority of Corporate Signatories.** Defendants represent and warrant that they are companies in good standing under the laws of their state of formation, and that the person executing this Agreement on their behalf is fully authorized to bind the Defendants.

**5.12   Reference of Disputes to Mediator.** The Parties agree that, in the event of any dispute arising out of the settlement or this Agreement or in the event that the number of late opt-ins prior to the Court's final approval of the settlement exceeds five (5), the Parties shall first make a good faith effort to resolve said issues on their own. If they are unable to resolve the dispute, the Parties will attempt in good faith to resolve any such dispute before the Mediator, Hunter Hughes.

DATED:   _11/28/2018_

NOBLE FOOD GROUP, INC., NFG
CHICAGO, LLC, NFG PORTLAND, LLC,
NFG SALEM, LLC, NFG SAN FRANCISCO, LLC AND
NFG SEATTLE, LLC, on behalf of itself and the related
entities

Signature: _____

By: _BRUCE VANDERBERG_

Their: _CEO / PRESIDENT._

DATED:

PLAINTIFF GARY KIRKWOOD, individually and on behalf of similarly situated persons

By: _____
    Gary Kirkwood

any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist on the specific performance of any and all of the provisions of this Agreement.

5.9    **Effective Date; Counterparts.** This Agreement shall become effective upon its execution. Named Plaintiff and Defendants may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Named Plaintiff and Defendants signed the same instrument.

5.10   **Signatures, Transmittals, Electronic Copies and Facsimiles.** Once a party has executed this Agreement, that signature page may be transmitted by email or facsimile to counsel for the other party. Any signature made and transmitted by email or facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding on the party whose counsel transmits the signature page by email or facsimile.

5.11   **Authority of Corporate Signatories.** Defendants represent and warrant that they are companies in good standing under the laws of their state of formation, and that the person executing this Agreement on their behalf is fully authorized to bind the Defendants.

5.12   **Reference of Disputes to Mediator.**  The Parties agree that, in the event of any dispute arising out of the settlement or this Agreement or in the event that the number of late opt-ins prior to the Court's final approval of the settlement exceeds five (5), the Parties shall first make a good faith effort to resolve said issues on their own.  If they are unable to resolve the dispute, the Parties will attempt in good faith to resolve any such dispute before the Mediator, Hunter Hughes.

DATED:                          NOBLE FOOD GROUP, INC., NFG
                                CHICAGO, LLC, NFG PORTLAND, LLC,
                                NFG SALEM, LLC, NFG SAN FRANCISCO, LLC AND
                                NFG SEATTLE, LLC, on behalf of itself and the related
                                entities

                                Signature:_____

                                By:_____

                                Their:_____


DATED:  11/27/2018              PLAINTIFF GARY KIRKWOOD, individually and on
                                behalf of similarly situated persons

                                By:  *Gary M. Kirkwood*
                                     _____
                                     Gary Kirkwood

## SUPPLEMENTAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Supplemental Settlement Agreement and General Release (the "Agreement")[1] is entered into by and between Conrado Diaz, Jr. ("Diaz"), on the one hand, and Defendants Noble Food Group, Inc., NFG Chicago, LLC, NFG Portland, LLC, NFG Salem, LLC, NFG San Francisco LLC, and NFG Seattle, LLC (collectively "Defendants")[2], on the other.

1.      **Purpose:**   This Supplemental Settlement Agreement and Release supplements and incorporates the Settlement and Release Agreement to be executed by the Parties and filed with the Court.  The purpose of this Agreement is to fully and conclusively resolve and settle all matters and claims Diaz could assert against Defendants and its current or former parents, franchisors (including Domino's Pizza, LLC), subsidiaries, affiliates, divisions, predecessors, successors, subrogees, assigns, benefit plans and related companies (including any entity which Diaz may allege jointly employed him), and each and all of their current or former agents, officers, directors, shareholders, members, employees, representatives, managers, attorneys, successors, predecessors, administrators, heirs, executors, trustees, assigns and insurers, and all persons acting by, through, under or in concert with any of them, and each of them, including, but not limited to, any claims for relief that were made or could have been made by Diaz in the matter of *Kirkwood, et al. v. Noble Food Group, Inc., et al*, Case No. 2:18-CV-00630  venued in the United States District Court for the Western District of Washington (hereinafter referred to as the "Lawsuit").  It is a further and equal purpose of this Agreement to resolve any and all disputes, controversies, or claims, that Diaz may have against Defendants and Released Parties, which arise out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law.

2.      **Opportunity to Negotiate, Consider and Consult with Counsel:**   The terms of this Agreement are the product of negotiations between the Parties hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.   In executing this Agreement, Diaz has not relied on any representation, compromise, conduct or action made by or on behalf of Defendants or Defendants' attorneys.  Diaz acknowledges that he has obtained the advice of competent counsel regarding this Agreement and agrees that he has been given a reasonable period of time within which to consider this Agreement.  Diaz and Defendants confirm that they have had this Agreement explained to them by their respective attorneys, they are relying on their own judgment and on the advice of their respective attorneys in executing this Agreement, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

3.      **No Admission of Liability:**  The parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any

---

[1] This Agreement shall replace the Agreement previously signed by the parties to correct a clerical error which omitted a necessary provision.

[2] The defined terms included in the Settlement and Release Agreement executed by the parties are incorporated by reference.

liability, wrongdoing or unlawful conduct whatsoever, whether by omission or commission, by or on the part of any Party, and that Defendants expressly deny any such liability and conduct.

4.      **Consideration:**  The consideration given to Diaz under this Agreement and the Settlement and Release Agreement consists of a payment to Diaz in the amount of Two Hundred Fifty Dollars and 00/100  ($250.00), plus Diaz's proportionate share of the Net Settlement Fund as set forth in the Settlement and Release Agreement.  The consideration given by Diaz to Defendants in support of this Agreement consists of full performance of each and every one of the respective obligations described in this document.

5.      **Voluntary Dismissal of Lawsuit:**  Diaz agrees to execute or cause to be executed on his behalf, by his counsel, any and all paperwork requested to fully and finally close any and all charges, complaints, proceedings or actions before any court or administrative agency, including the Lawsuit.  By executing this Agreement, Diaz agrees to dismiss the Lawsuit with prejudice as soon as practicable, but not more than two (2) weeks following the Court's approval of the Settlement and Release Agreement.

6.      **Release of Defendants and Released Parties:**  For and in consideration of the required acts and promises set forth in the text of this Agreement, Diaz, for himself and his heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharges Defendants and Released Parties from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, accrued to date, which Diaz has or might have against Defendants and the Released Parties, including all claims as a result of, or in any way connected with Diaz's employment or separation of employment with Defendants, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and California;  The California Fair Employment and Housing Act; The California Labor Code, specifically including, but not limited to the Private Attorney General Act pursuant to Labor Code § 2699, et seq.; The California Business and Professions Code, specifically including, but not limited to Business & Professions Code § 17200; The California Family Rights Act; The California Pregnancy Discrimination Act; The California Wage Orders; The California Occupational Safety and Health Act, or the Federal equivalent;any basis for recovering costs, fees, or other expenses including attorney fees awarded in these matters all other local, state or federal laws including but not limited to those relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, breach of a specific promise, any and all claims or rights under federal, state or local

2

laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, incentives and other compensation to employees , severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, accrued to date, which Diaz has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law.  By signing this Agreement, Diaz promises, covenants and agrees, to the fullest extent permitted by law, that he will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement.  Diaz acknowledges and agrees that, except as expressly limited in this release, this release releases and precludes any claims of which he is not now aware and of which he may only become aware at some later date.  Nevertheless, Diaz fully and freely intends to and does, by executing this Agreement, release any such claims.  This release in all respects has been voluntarily and knowingly executed with the express intention of effecting the legal consequences provided in the California Civil Code § 1541, that is, the extinguishment of obligations herein designated

Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

7.  **Waiver of Section 1542**:  Plaintiff acknowledges and agrees that it is his intention in executing this Agreement that the same shall be effective as a bar to each and every claim, demand, cause of action, obligation, damage, liability, charge, attorneys' fees and costs herein above released. Plaintiff expressly waives and relinquishes all of his rights and benefits, if any, arising under the provisions of California *Civil Code* § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

8.  **No Re-Employment:**  Diaz understands, acknowledges and agrees that his employment with Defendants terminated effective the close of business on January 22, 2018, (the "Termination Date"), that he ceased to be employed by Defendants as of the Termination Date and that he will not seek re-employment with or by Defendants.  Diaz expressly waives and disclaims any right to reinstatement or reemployment with or by Defendants, and promises and agrees never to seek employment or reinstatement with or by Defendants, or its parent companies, subsidiaries, affiliates,

divisions, predecessors, successors and/or related companies, at any time in the future.  Diaz agrees and acknowledges that his signature on this Agreement is grounds for immediate rejection of any application for employment or reinstatement submitted by him. Furthermore, nothing in this Paragraph shall impact Diaz's employment relationship with any companies that subsequently merge with, acquire, or are acquired by Defendants, nor will it preclude Diaz from applying for employment with any companies which are not currently owned or affiliated with Defendants but which subsequently merge with, acquire, or are acquired by Defendants.

**9.**     **Acknowledgment of Receipt of All Payment Owed:**  Diaz agrees and acknowledges that he has received all salary, wages, commissions, Paid Time Off (PTO), overtime payments, reimbursements, liquidated damages and employee benefits to which Diaz was and/or is entitled as a result of Diaz's employment with Defendants, and specifically waives, releases and discharges any right or entitlement he may have to any further compensation or other payments from Defendants, except as set forth in this Agreement.

**10. Pending Actions or Claims/Leave.**   Other than *Kirkwood v. Noble Food Group, Inc.* et all, currently pending in the United States District Court for the Western District of Washington (Case No. 2:18-CV-00630), Diaz affirms that he has not filed any other lawsuits, charges, or claims **against Defendants at the time he executes this Agreement.  Further, Diaz affirms has not suffered any work-related illness, occupational disease, or injury that could form the basis of any workers' compensation or disability claim as of the date he executed this Agreement. He further also affirms that he has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or similar state or local leave or disability accommodation laws.**

**11. Non-Disparagement:**   Diaz agrees that he will neither say, write nor communicate in any manner to any person or entity anything derogatory or disparaging about Defendants, regardless of the truth or falsity of the information, except that nothing in this provision shall prevent Diaz from making any truthful statement in connection with any legal proceeding or any investigation by any governmental authority. Diaz understands that he should direct inquiries from his employers or prospective employers seeking verification of his employment with Defendants to: Human Resources Director, Cheryl Reichenberger at Cheryl.r@noblefoodgroup.com or 541.505.7478. Defendants hereby confirm that, upon receipt of a request for information from Diaz's employers or prospective employers seeking verification of his employment with Defendants, Defendants shall provide or confirm only Diaz's employment status, dates of employment and job title, and shall not disclose any information about the circumstances of or reasons for the termination of his employment with the Defendants.

**12.**     **Attorneys' Fees.**   Subject only to the application for attorney's fees as set forth in the Settlement and Release Agreement in connection with the Lawsuit, Diaz expressly acknowledges and agrees that he alone is responsible and liable for paying any and all attorneys' fees and related costs and disbursements he has incurred in connection with (i) his prior employment relationship with Defendants and the termination of that relationship, (ii) the claims he has asserted or alleged or could have asserted or alleged against Defendants, and (iii) the negotiation and drafting of this Agreement, and that Defendants have no responsibility or obligation whatsoever to pay any such attorney's fees, costs or disbursements.

**13**     **Medicare Reporting Requirements.**  The Parties have considered Medicare's interest in this matter, if any, and Diaz declares and expressly warrants that, as of the date he signed this Agreement, he was not Medicare eligible (*i.e.*, is not 65 years of age or older, is not suffering from end stage renal failure or ALS, has not received Social Security Disability Insurance benefits for 24 months or longer, etc.).  Nonetheless, if the Centers for Medicare & Medicaid Services ("CMS") (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Diaz under this settlement, Diaz agrees to: (i) indemnify, defend, and hold the Company harmless from any action by CMS relating to medical expenses of Diaz; (ii) reasonably cooperate with the Company upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Diaz is required to indemnify the Company under this paragraph; and (iii) waive any and all future actions against the Company for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).  Diaz agrees to complete the Medicare Information Authorization Form (attached as Exhibit A to this Agreement) and to deliver the completed form to the Company's attorneys.

**14.**     **Specific Release of Age Discrimination in Employment Act Claims.**

    **a.**     **Waiver of ADEA Claims:**  Diaz acknowledges that this Agreement includes a release and waiver of any and all claims of age discrimination Diaz may have under the Age Discrimination in Employment Act (ADEA) and the Older Worker Benefits Protection Act.  Diaz understands that Diaz is not releasing any ADEA claims that arise after Diaz signs this Agreement.

    **b.**     **Consideration for Waiver of ADEA Claims:**  The parties agree that the promises set forth in Paragraph 4 are being provided, in part, in exchange for Diaz's knowing and voluntary release and waiver of all rights and claims Diaz has or may have arising under the ADEA.

    **c.**     **Consideration Period:**  Diaz acknowledges that the Company has advised Diaz, in writing, to consult with an attorney prior to executing this Agreement, and that the Company provided Diaz with at least twenty-one (21) days to review and consider this Agreement before executing it.  Diaz agrees that, if Diaz executes this Agreement prior to the end of the twenty-one (21) day period, such early execution was a knowing and voluntary waiver of Diaz's right to consider this Agreement for at least twenty-one (21) days.

    **d**.     **Right to Revoke ADEA Claims:**  Diaz and the Company agree that, for a period of seven (7) calendar days following the execution of this Agreement, Diaz may revoke those provisions of this Agreement releasing and waiving Diaz rights and claims under the ADEA, and those provisions shall not become effective or enforceable until the revocation period has expired without Diaz exercising the right to revoke.  Should Diaz exercise Diaz's right to revoke under this provision, Diaz shall only be entitled to $100 and shall not be entitled to the other benefits and promises set forth in Paragraph 4.  If Diaz wishes to revoke, Diaz must do so by confirmed delivery of written notice of revocation to Cheryl Reichenberger at Cheryl.r@noblefoodgroup.com, no later than the seventh (7th) day following Diaz's execution of this Agreement.  Diaz's initials at the bottom of this page indicate that Diaz has specifically read this section and understands its terms.

e.     **Binding Effect of Other Terms:**  All other terms and conditions of this Agreement shall be binding and enforceable immediately upon Diaz's execution of this Agreement, and shall remain effective regardless of whether Diaz revokes Diaz's waiver and release of ADEA rights and claims.

15.     **Knowing and Voluntary Agreement.**  The Parties to this Agreement acknowledge and agree that each of them has had a full opportunity to carefully review the terms and provisions of this Agreement and to review the Agreement with their own attorney, that to the extent they wanted to talk to an attorney about this Agreement they have availed themselves of that right, and that each of them enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other Party to this Agreement other than those specifically set out herein and that they understand this Agreement constitutes a final and complete release of all claims against the Party released, regardless of their kind or character, including any possible claim which might be discovered in the future.  By executing this Agreement, all the Parties represent and agree that they have carefully read and fully understand all the provisions of this Agreement, and that they are knowingly and voluntarily entering into this Agreement.

16.     **Remedies upon Breach.**  The Parties acknowledge and agree that, in the event of a breach of any of the terms or provisions of this Agreement, nothing in this Agreement shall be construed to preclude or limit any party from asserting claims or filing a lawsuit for the purpose of: (a) recovering moneys paid under this Agreement; (b) enforcing rights under this Agreement; or (c) pursuing any other rights and remedies available under law, including equitable relief, injunctive relief, and damages.

17.     **Interpretation of Agreement.**  The Parties to this Agreement acknowledge and agree that: (a) this Agreement and its reduction to final written form are the result of good faith negotiations between the Parties through their respective counsel; (b) said counsel have carefully reviewed and examined this Agreement before execution by said Parties, or any of them; and (c) any statute or rule of construction that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

18.     **Assignability and Binding Effect.**  This Agreement, and all the provisions contained herein, shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, successors and legal representatives of Diaz, and shall inure to the benefit of and be binding upon Defendants and its respective successors and assigns.  This Agreement may be transferred or assigned by Defendants.  The obligations of Diaz under this Agreement may not be delegated and Diaz may not assign, transfer, or otherwise convey or dispose of this Agreement, or any of its rights hereunder, and any such attempted delegation, assignment or disposition by Diaz shall be null, void, and without effect.

19.     **No Changes to Agreement:**  No modifications or amendments to any of the terms, conditions, or provisions of this Agreement and the incorporated Settlement and Release Agreement may be made except by a written agreement executed by all Parties hereto.

20.     **Representations regarding of Claims:**

6

     **a.**     Diaz represents that he is not aware of any claims against Defendants other than those asserted in the Lawsuit and acknowledges that he has had the opportunity to discuss this matter with counsel of his choice, including Richard M. Paul III of Paul LLP, Mark A. Potashnick of the law firm Weinhaus & Potashnick, and Jason Murphy of Phillips Law Firm, PLLC.

     **b.**     Diaz represents and warrants that Diaz has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

**21.**   **Effective Date; Counterparts**: This Agreement shall become effective upon its execution. Diaz and Defendants may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Named Plaintiff and Defendants signed the same instrument. Upon the Effective Date of this Agreement, Plaintiff understands and agrees that he is no longer an "aggrieved employee" under the Private Attorneys General Act with respect to the claims alleged in the Seventh Cause of Action for Civil Penalties pursuant to Private Attorneys General Act, Labor Code § 2699, et seq.  No part of the Settlement Payment provided for herein is allocated to the release of the claims of other allegedly aggrieved employees under the Private Attorneys General Act, Labor Code § 2699, et seq.

**22.**   **Multiple Originals:**  This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.  Electronic or fax revisions shall be deemed originals.

DATED: _____, 2018      DEFENDANTS NOBLE FOOD GROUP, INC., NFG CHICAGO, LLC, NFG PORTLAND, LLC, NFG SALEM, LLC, NFG SAN FRANCISCO, LLC, and NFG SEATTLE, LLC., on behalf of itself and its related entities

Signature:_____

By:_____

Their: _____

DATED: 12/20_____, 2018     PLAINTIFF CONRADO DIAZ, JR.

By:_____
        Conrado Diaz, Jr.

# Exhibit A

## MEDICARE INFORMATION AND AUTHORIZATION FORM

The Center for Medicare & Medicaid Services (CMS) is the federal agency that oversees the Medicare program. In certain situations, Medicare may make a "conditional payment" so as not to inconvenience the beneficiary, and seek to recover the payments later. When an employee receives severance or other payments in exchange for a release of claims, Section 111 of the Medicare, Medicaid and SCHIP Extension Act (MMSEA), requires employers to determine whether the employee is a Medicare Beneficiary and, if so, to report the severance or other payment and related information.

Please review this picture of the Medicare card to determine if you have, or have ever had, a similar Medicare card and complete Sections I and II of this Form.

Medicare card.



DO NOT SEND CLAIMS FOR PAYMENT OF
MEDICARE BENEFITS TO THIS (2) ADDRESS

### Section I

| Are you presently, or have you ever been, enrolled in Medicare Part A or Part B? | □Yes | ☑No |
|---|---|---|

**Full Name:** *(Please print the name exactly as it appears on your SSN or Medicare card if available.)*

| C | O | M | P | A | D | O | | D | I | A | Z | , | J | R | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| **Medicare Claim Number:** | | | | | | | | | | **Date of Birth (Mo/Day/Year)** | | | | | - | | | | - | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| **Social Security Number:** *(If Medicare Claim Number is Unavailable)* | | **Sex** M | □Female | ☑Male |
|---|---|---|---|---|

### Section II

I authorize American Hose & Hydraulics ("the Company") and/or the Company's insurers/agents/professional employer organization to run a query with CMS to determine my Medicare eligibility and enrollment status (i.e. whether I am a Medicare Beneficiary). If CMS identifies me as a Medicare Beneficiary, I further authorize the Company and/or the Company's insurers/agents/professional employer organization to take all necessary steps to report any required information in connection with any severance or other payments I will receive in exchange for a release of claims. I understand that the information requested is to enable the Company

9

and/or the Company's insurers/agents/professional employer organization to meet any mandatory reporting obligations under Medicare law. The information provided for confirmation of my Medicare status, including my name, gender, date of birth, and Social Security Number, is complete, accurate, and current.

CONRADO DIAZ, JR.
**Name (Please Print)**

12/5/18
**Signature**                    **Date**

*If you have completed Sections I and II above, stop here and submit this form to the Company. If you are refusing to provide the information requested in Sections I and II, proceed to Section III.*

**Section III**

**Name (Please Print)**

For the reason(s) listed below, I have not provided the information requested. I understand that if I am a Medicare Beneficiary and I do not provide the requested information, I may be violating obligations to assist Medicare in coordinating benefits to pay my claims correctly and promptly.

**Reason(s) For Refusal To Provide Requested Information:**

**Signature of Person Completing Section III**              **Date**

10

### SUPPLEMENTAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Supplemental Settlement Agreement and General Release (the "Agreement") is entered into by and between Jimmie Jones ("Jones"), on the one hand, and Defendants Noble Food Group, Inc., NFG Chicago, LLC, NFG Portland, LLC, NFG Salem, LLC, NFG San Francisco LLC, and NFG Seattle, LLC (collectively "Defendants")[1], on the other.

**1.     Purpose:** This Supplemental Settlement Agreement and Release supplements and incorporates the Settlement and Release Agreement to be executed by the Parties and filed with the Court. The purpose of this Agreement is to fully and conclusively resolve and settle all matters and claims Jones could assert against Defendants and its current or former parents, franchisors (including Domino's Pizza, LLC), subsidiaries, affiliates, divisions, predecessors, successors, subrogees, assigns, benefit plans and related companies (including any entity which Jones may allege jointly employed him), and each and all of their current or former agents, officers, directors, shareholders, members, employees, representatives, managers, attorneys, successors, predecessors, administrators, heirs, executors, trustees, assigns and insurers, and all persons acting by, through, under or in concert with any of them, and each of them, including, but not limited to, any claims for relief that were made or could have been made by Jones in the matter of *Kirkwood, et al. v. Noble Food Group, Inc., et al*, Case No. 2:18-CV-00630 venued in the United States District Court for the Western District of Washington (hereinafter referred to as the "Lawsuit"). It is a further and equal purpose of this Agreement to resolve any and all disputes, controversies, or claims, that Jones may have against Defendants and Released Parties, which arise out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law.

**2.     Opportunity to Negotiate, Consider and Consult with Counsel:** The terms of this Agreement are the product of negotiations between the Parties hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed. In executing this Agreement, Jones has not relied on any representation, compromise, conduct or action made by or on behalf of Defendants or Defendants' attorneys. Jones acknowledges that he has obtained the advice of competent counsel regarding this Agreement and agrees that he has been given a reasonable period of time within which to consider this Agreement. Jones and Defendants confirm that they have had this Agreement explained to them by their respective attorneys, they are relying on their own judgment and on the advice of their respective attorneys in executing this Agreement, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

**3.     No Admission of Liability:** The parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any liability, wrongdoing or unlawful conduct whatsoever, whether by omission or commission, by or on the part of any Party, and that Defendants expressly deny any such liability and conduct.

---

[1] The defined terms included in the Settlement and Release Agreement executed by the parties are incorporated by reference.

**4.     Consideration:** The consideration given to Jones under this Agreement and the Settlement and Release Agreement consists of a payment to Jones in the amount of Two Hundred Fifty Dollars and 00/100 ($250.00), plus Jones's proportionate share of the Net Settlement Fund as set forth in the Settlement and Release Agreement. The consideration given by Jones to Defendants in support of this Agreement consists of full performance of each and every one of the respective obligations described in this document.

**5.     Voluntary Dismissal of Lawsuit:** Jones agrees to execute or cause to be executed on his behalf, by his counsel, any and all paperwork requested to fully and finally close any and all charges, complaints, proceedings or actions before any court or administrative agency, including the Lawsuit. By executing this Agreement, Jones agrees to dismiss the Lawsuit with prejudice as soon as practicable, but not more than two (2) weeks following the Court's approval of the Settlement and Release Agreement.

**6.     Release of Defendants and Released Parties:** For and in consideration of the required acts and promises set forth in the text of this Agreement, Jones, for himself and his heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharges Defendants and Released Parties from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, accrued to date, which Jones has or might have against Defendants and the Released Parties, including all claims as a result of, or in any way connected with Jones's employment or separation of employment with Defendants, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and California; The California Fair Employment and Housing Act; The California Labor Code, specifically including, but not limited to the Private Attorney General Act pursuant to Labor Code § 2699, et seq.; The California Business and Professions Code, specifically including, but not limited to Business & Professions Code § 17200; The California Family Rights Act; The California Pregnancy Discrimination Act; The California Wage Orders; The California Occupational Safety and Health Act, or the Federal equivalent; any basis for recovering costs, fees, or other expenses including attorney fees awarded in these matters all other local, state or federal laws including but not limited to those relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, breach of a specific promise, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, incentives and other compensation to employees , severance pay claims, promissory estoppel, fraud,

fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, accrued to date, which Jones has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law. By signing this Agreement, Jones promises, covenants and agrees, to the fullest extent permitted by law, that he will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement. Jones acknowledges and agrees that, except as expressly limited in this release, this release releases and precludes any claims of which he is not now aware and of which he may only become aware at some later date. Nevertheless, Jones fully and freely intends to and does, by executing this Agreement, release any such claims. This release in all respects has been voluntarily and knowingly executed with the express intention of effecting the legal consequences provided in the California Civil Code § 1541, that is, the extinguishment of obligations herein designated

Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

7.    **Waiver of Section 1542:** Plaintiff acknowledges and agrees that it is his intention in executing this Agreement that the same shall be effective as a bar to each and every claim, demand, cause of action, obligation, damage, liability, charge, attorneys' fees and costs herein above released. Plaintiff expressly waives and relinquishes all of his rights and benefits, if any, arising under the provisions of California *Civil Code* § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

8.    **No Re-Employment:** Jones understands, acknowledges and agrees that his employment with Defendants terminated effective the close of business on January 22, 2018, (the "Termination Date"), that he ceased to be employed by Defendants as of the Termination Date and that he will not seek re-employment with or by Defendants. Jones expressly waives and disclaims any right to reinstatement or reemployment with or by Defendants, and promises and agrees never to seek employment or reinstatement with or by Defendants, or its parent companies, subsidiaries, affiliates, divisions, predecessors, successors and/or related companies, at any time in the future. Jones agrees and acknowledges that his signature on this Agreement is grounds for immediate rejection of any

application for employment or reinstatement submitted by him. Furthermore, nothing in this Paragraph shall impact Jones's employment relationship with any companies that subsequently merge with, acquire, or are acquired by Defendants, nor will it preclude Jones from applying for employment with any companies which are not currently owned or affiliated with Defendants but which subsequently merge with, acquire, or are acquired by Defendants.

9.      **Acknowledgment of Receipt of All Payment Owed:** Jones agrees and acknowledges that he has received all salary, wages, commissions, Paid Time Off (PTO), overtime payments, reimbursements, liquidated damages and employee benefits to which Jones was and/or is entitled as a result of Jones's employment with Defendants, and specifically waives, releases and discharges any right or entitlement he may have to any further compensation or other payments from Defendants, except as set forth in this Agreement.

10.     **Pending Actions or Claims/Leave.** Other than *Kirkwood v. Noble Food Group, Inc.* et all, currently pending in the United States District Court for the Western District of Washington (Case No. 2:18-CV-00630), Jones affirms that he has not filed any other lawsuits, charges, or claims **against Defendants at the time he executes this Agreement. Further, Jones affirms has not suffered any work-related illness, occupational disease, or injury that could form the basis of any workers' compensation or disability claim as of the date he executed this Agreement. He further also affirms that he has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or similar state or local leave or disability accommodation laws.**

11.     **Non-Disparagement:** Jones agrees that he will neither say, write nor communicate in any manner to any person or entity anything derogatory or disparaging about Defendants, regardless of the truth or falsity of the information, except that nothing in this provision shall prevent Jones from making any truthful statement in connection with any legal proceeding or any investigation by any governmental authority. Jones understands that he should direct inquiries from his employers or prospective employers seeking verification of his employment with Defendants to: Human Resources Director, Cheryl Reichenberger at Cheryl.r@noblefoodgroup.com or 541.505.7478. Defendants hereby confirm that, upon receipt of a request for information from Jones's employers or prospective employers seeking verification of his employment with Defendants, Defendants shall provide or confirm only Jones's employment status, dates of employment and job title, and shall not disclose any information about the circumstances of or reasons for the termination of his employment with the Defendants.

12.     **Attorneys' Fees.** Subject only to the application for attorney's fees as set forth in the Settlement and Release Agreement in connection with the Lawsuit, Jones expressly acknowledges and agrees that he alone is responsible and liable for paying any and all attorneys' fees and related costs and disbursements he has incurred in connection with (i) his prior employment relationship with Defendants and the termination of that relationship, (ii) the claims he has asserted or alleged or could have asserted or alleged against Defendants, and (iii) the negotiation and drafting of this Agreement, and that Defendants have no responsibility or obligation whatsoever to pay any such attorney's fees, costs or disbursements.

13      **Medicare Reporting Requirements.** The Parties have considered Medicare's interest in this matter, if any, and Jones declares and expressly warrants that, as of the date he signed this

Agreement, he was not Medicare eligible (*i.e.*, is not 65 years of age or older, is not suffering from end stage renal failure or ALS, has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services ("CMS") (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Jones under this settlement, Jones agrees to: (i) indemnify, defend, and hold the Company harmless from any action by CMS relating to medical expenses of Jones; (ii) reasonably cooperate with the Company upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Jones is required to indemnify the Company under this paragraph; and (iii) waive any and all future actions against the Company for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).   Jones agrees to complete the Medicare Information Authorization Form (attached as Exhibit A to this Agreement) and to deliver the completed form to the Company's attorneys.

**14.**   **Specific Release of Age Discrimination in Employment Act Claims.**

      **a.**   **Waiver of ADEA Claims:** Jones acknowledges that this Agreement includes a release and waiver of any and all claims of age discrimination Jones may have under the Age Discrimination in Employment Act (ADEA) and the Older Worker Benefits Protection Act. Jones understands that Jones is not releasing any ADEA claims that arise after Jones signs this Agreement.

      **b.**   **Consideration for Waiver of ADEA Claims:** The parties agree that the promises set forth in Paragraph 4 are being provided, in part, in exchange for Jones's knowing and voluntary release and waiver of all rights and claims Jones has or may have arising under the ADEA.

      **c.**   **Consideration Period:** Jones acknowledges that the Company has advised Jones, in writing, to consult with an attorney prior to executing this Agreement, and that the Company provided Jones with at least twenty-one (21) days to review and consider this Agreement before executing it. Jones agrees that, if Jones executes this Agreement prior to the end of the twenty-one (21) day period, such early execution was a knowing and voluntary waiver of Jones's right to consider this Agreement for at least twenty-one (21) days.

      **d.**   **Right to Revoke ADEA Claims:** Jones and the Company agree that, for a period of seven (7) calendar days following the execution of this Agreement, Jones may revoke those provisions of this Agreement releasing and waiving Jones rights and claims under the ADEA, and those provisions shall not become effective or enforceable until the revocation period has expired without Jones exercising the right to revoke. Should Jones exercise Jones's right to revoke under this provision, Jones shall only be entitled to $100 and shall not be entitled to the other benefits and promises set forth in Paragraph 4. If Jones wishes to revoke, Jones must do so by confirmed delivery of written notice of revocation to Cheryl Reichenberger at Cheryl.r@noblefoodgroup.com, no later than the seventh (7th) day following Jones's execution of this Agreement. Jones's initials at the bottom of this page indicate that Jones has specifically read this section and understands its terms.

e.      **Binding Effect of Other Terms:**  All other terms and conditions of this Agreement shall be binding and enforceable immediately upon Jones's execution of this Agreement, and shall remain effective regardless of whether Jones revokes Jones's waiver and release of ADEA rights and claims.

**15.**      **Knowing and Voluntary Agreement.** The Parties to this Agreement acknowledge and agree that each of them has had a full opportunity to carefully review the terms and provisions of this Agreement and to review the Agreement with their own attorney, that to the extent they wanted to talk to an attorney about this Agreement they have availed themselves of that right, and that each of them enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other Party to this Agreement other than those specifically set out herein and that they understand this Agreement constitutes a final and complete release of all claims against the Party released, regardless of their kind or character, including any possible claim which might be discovered in the future.  By executing this Agreement, all the Parties represent and agree that they have carefully read and fully understand all the provisions of this Agreement, and that they are knowingly and voluntarily entering into this Agreement.

**16.**      **Remedies upon Breach.** The Parties acknowledge and agree that, in the event of a breach of any of the terms or provisions of this Agreement, nothing in this Agreement shall be construed to preclude or limit any party from asserting claims or filing a lawsuit for the purpose of: (a) recovering moneys paid under this Agreement; (b) enforcing rights under this Agreement; or (c) pursuing any other rights and remedies available under law, including equitable relief, injunctive relief, and damages.

**17.**      **Interpretation of Agreement.** The Parties to this Agreement acknowledge and agree that: (a) this Agreement and its reduction to final written form are the result of good faith negotiations between the Parties through their respective counsel; (b) said counsel have carefully reviewed and examined this Agreement before execution by said Parties, or any of them; and (c) any statute or rule of construction that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

**18.**      **Assignability and Binding Effect.** This Agreement, and all the provisions contained herein, shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, successors and legal representatives of Jones, and shall inure to the benefit of and be binding upon Defendants and its respective successors and assigns.  This Agreement may be transferred or assigned by Defendants.  The obligations of Jones under this Agreement may not be delegated and Jones may not assign, transfer, or otherwise convey or dispose of this Agreement, or any of its rights hereunder, and any such attempted delegation, assignment or disposition by Jones shall be null, void, and without effect.

**19.**      **No Changes to Agreement:** No modifications or amendments to any of the terms, conditions, or provisions of this Agreement and the incorporated Settlement and Release Agreement may be made except by a written agreement executed by all Parties hereto.

**20.     Representations regarding of Claims:**

    **a.**     Jones represents that he is not aware of any claims against Defendants other than those asserted in the Lawsuit and acknowledges that he has had the opportunity to discuss this matter with counsel of his choice, including Richard M. Paul III of Paul LLP, Mark A. Potashnick of the law firm Weinhaus & Potashnick, and Jason Murphy of Phillips Law Firm, PLLC.

    **b.**     Jones represents and warrants that Jones has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

**21.     Multiple Originals:** This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Electronic or fax revisions shall be deemed originals.

DATED: _12/8_, 2018     DEFENDANTS NOBLE FOOD GROUP, INC., NFG CHICAGO, LLC, NFG PORTLAND, LLC, NFG SALEM, LLC, NFG SAN FRANCISCO, LLC, and NFG SEATTLE, LLC., on behalf of itself and its related entities

Signature: _____

By: _____ Jimmie D Jones _____

Their: _____

DATED: _12/9_, 2018     PLAINTIFF JIMMIE JONES

By: _____
        Jimmie Jones

**21.**   **Multiple Originals:**  This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.  Electronic or fax revisions shall be deemed originals.


DATED: __11/28/__, 2018

DEFENDANTS NOBLE FOOD GROUP, INC., NFG CHICAGO, LLC, NFG PORTLAND, LLC, NFG SALEM, LLC, NFG SAN FRANCISCO, LLC, and NFG SEATTLE, LLC., on behalf of itself and its related entities

Signature: _____

By: _BRUCE VANDERBERG_____

Their: _CEO / PRESIDENT_____


DATED: _____, 2018

PLAINTIFF JIMMIE JONES

By:_____
        Jimmie Jones


7

**MEDICARE INFORMATION AND AUTHORIZATION FORM**

The Center for Medicare & Medicaid Services (CMS) is the federal agency that oversees the Medicare program. In certain situations, Medicare may make a "conditional payment" so as not to inconvenience the beneficiary, and seek to recover the payments later. When an employee receives severance or other payments in exchange for a release of claims, Section 111 of the Medicare, Medicaid and SCHIP Extension Act (MMSEA), requires employers to determine whether the employee is a Medicare Beneficiary and, if so, to report the severance or other payment and related information.

Please review this picture of the Medicare card to determine if you have, or have ever had, a similar Medicare card and complete Sections I and II of this Form.

Medicare card.



**Section I**

| Are you presently, or have you ever been, enrolled in Medicare Part A or Part B? | □Yes | ☒No |
|---|---|---|

**Full Name:** *(Please print the name exactly as it appears on your SSN or Medicare card if available.)*

| J | C | M | M | I | E | | D | | J | O | N | E | S | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| **Medicare Claim Number:** | | | | | | | | | | | | | **Date of Birth (Mo/Day/Year)** | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| **Social Security Number:** *(If Medicare Claim Number is Unavailable* | | **Sex** | □Female | ☒Male |
|---|---|---|---|---|

**Section II**

I authorize American Hose & Hydraulics ("the Company") and/or the Company's insurers/agents/professional employer organization to run a query with CMS to determine my Medicare eligibility and enrollment status

9

(i.e. whether I am a Medicare Beneficiary).  If CMS identifies me as a Medicare Beneficiary, I further authorize the Company and/or the Company's insurers/agents/professional employer organization to take all necessary steps to report any required information in connection with any severance or other payments I will receive in exchange for a release of claims.  I understand that the information requested is to enable the Company and/or the Company's insurers/agents/professional employer organization to meet any mandatory reporting obligations under Medicare law. The information provided for confirmation of my Medicare status, including my name, gender, date of birth, and Social Security Number, is complete, accurate, and current.

_____
**Name (Please Print)**

_____
**Signature**           **Date**   12/8/18

*If you have completed Sections I and II above, stop here and submit this form to the Company.  If you are refusing to provide the information requested in Sections I and II, proceed to Section III.*

**Section III**

_____
**Name (Please Print)**

For the reason(s) listed below, I have not provided the information requested. I understand that if I am a Medicare Beneficiary and I do not provide the requested information, I may be violating obligations to assist Medicare in coordinating benefits to pay my claims correctly and promptly.

**Reason(s) For Refusal To Provide Requested Information:**

_____

_____
**Signature of Person Completing Section III**       **Date**   12-8-2518

### SUPPLEMENTAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Supplemental Settlement Agreement and General Release (the "Agreement") is entered into by and between named Plaintiff Gary Kirkwood (the "Kirkwood"), on the one hand, and Defendants Noble Food Group, Inc., NFG Chicago, LLC, NFG Portland, LLC, NFG Salem, LLC, NFG San Francisco LLC, and NFG Seattle, LLC (collectively "Defendants")[1], on the other.

1. **Purpose:**  This Supplemental Settlement Agreement and Release supplements and incorporates the Settlement and Release Agreement to be executed by the Parties and filed with the Court.  The purpose of this Agreement is to fully and conclusively resolve and settle all matters and claims Kirkwood could assert against Defendants and its current or former parents, franchisors (including Domino's Pizza, LLC), subsidiaries, affiliates, divisions, predecessors, successors, subrogees, assigns, benefit plans and related companies (including any entity which Kirkwood may allege jointly employed him), and each and all of their current or former agents, officers, directors, shareholders, members, employees, representatives, managers, attorneys, successors, predecessors, administrators, heirs, executors, trustees, assigns and insurers, and all persons acting by, through, under or in concert with any of them, and each of them, including, but not limited to, any claims for relief that were made or could have been made by Kirkwood in the matter of *Kirkwood, et al. v. Noble Food Group, Inc., et al*, Case No. 2:18-CV-00630, venued in the United States District Court for the Western District of Washington (hereinafter referred to as the "Lawsuit").  It is a further and equal purpose of this Agreement to resolve any and all disputes, controversies, or claims, that Kirkwood may have against Defendants and Released Parties, which arise out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law.

2. **Opportunity to Negotiate, Consider and Consult with Counsel:**  The terms of this Agreement are the product of negotiations between the Parties hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.  In executing this Agreement, Kirkwood has not relied on any representation, compromise, conduct or action made by or on behalf of Defendants or Defendants' attorneys.  Kirkwood acknowledges that he has obtained the advice of competent counsel regarding this Agreement and agrees that he has been given a reasonable period of time within which to consider this Agreement.  Kirkwood and Defendants confirm that they have had this Agreement explained to them by their respective attorneys, they are relying on their own judgment and on the advice of their respective attorneys in executing this Agreement, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

3. **No Admission of Liability:**  The parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any

---

[1] The defined terms included in the Settlement and Release Agreement executed by the parties are incorporated by reference.

liability, wrongdoing or unlawful conduct whatsoever, whether by omission or commission, by or on the part of any Party, and that Defendants expressly deny any such liability and conduct.

4. **Consideration:**  The consideration given to Kirkwood under this Agreement and the Settlement and Release Agreement consists of payment to Kirkwood in the amount of Three Thousand Dollars and 00/100 ($3,000), identified as Kirkwood's Service Award in the Settlement and Release Agreement, plus Kirkwood's proportionate share of the Net Settlement Fund as set forth in the Settlement and Release Agreement.  The consideration given by Kirkwood to Defendants in support of this Agreement consists of full performance of each and every one of the respective obligations described in this document.

5. **Voluntary Dismissal of Lawsuit:** Kirkwood agrees to execute or cause to be executed on his behalf, by his counsel, any and all paperwork requested to fully and finally close any and all charges, complaints, proceedings or actions before any court or administrative agency, including the Lawsuit. By executing this Agreement, Kirkwood agrees to dismiss the Lawsuit with prejudice as soon as practicable, but not more than two (2) weeks following the Court's approval of the Settlement and Release Agreement.

6. **Release of Defendants and Released Parties:**  For and in consideration of the required acts and promises set forth in the text of this Agreement, Kirkwood, for himself and his heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharges Defendants and Released Parties from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, accrued to date, which Kirkwood has or might have against Defendants and the Released Parties, including all claims as a result of, or in any way connected with Kirkwood's employment or separation of employment with Defendants, which including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States, the State of California and State of Washington ; the Washington Consumer Protection Act, Chapter 19.182 RCW; Washington's Law Against Discrimination, Chapter 49.60 RCW;  the Washington Industrial Safety and Health Act, Chapter 49.17 RCW; the Washington Family Care Act; any provision of Title 49 of the Revised Code of Washington; any provision of Title 296 of the Washington Administrative Code;  any claim alleging the exception to the Industrial Insurance Act of Washington for injuries inflicted with deliberate intention (RCW 51.24.020); the California Fair Employment and Housing Act; the California Labor Code, specifically including, but not limited to the Private Attorney General Act pursuant to Labor Code § 2699, et seq.; the California Business and Professions Code, specifically including, but not limited to Business & Professions Code § 17200; the California Family Rights Act; The California Pregnancy Discrimination Act;

2

The California Wage Orders; the California Occupational Safety and Health Act; any basis for recovering costs, fees, or other expenses including attorney fees awarded in these matters all other local, state or federal laws including but not limited to those relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, breach of a specific promise, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, incentives and other compensation to employees (including under the Fair Labor Standards Act 29 U.S.C.§ 201, *et seq.* and Washington's Minimum Wage Act, Chapter 49.46 RCW) , severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, accrued to date, which Kirkwood has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law.  By signing this Agreement, Kirkwood promises, covenants and agrees, to the fullest extent permitted by law, that he will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement.  Kirkwood acknowledges and agrees that, except as expressly limited in this release, this release releases and precludes any claims of which he is not now aware and of which he may only become aware at some later date. Nevertheless, Kirkwood fully and freely intends to and does, by executing this Agreement, release any such claims.  Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

1.1    CALIFORNIA CIVIL CODE 1542. With respect to Kirkwood's releases herein, Kirkwood stipulates and agrees that, upon the Date of Final Approval, he shall be deemed to have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS, WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

3

7.    **No Re-Employment:**    Kirkwood understands, acknowledges and agrees that his employment with Defendants terminated effective the close of business on January 22, 2018, (the "Termination Date"), that he ceased to be employed by Defendants as of the Termination Date and that he will not seek re-employment with or by Defendants.  Kirkwood expressly waives and disclaims any right to reinstatement or reemployment with or by Defendants, and promises and agrees never to seek employment or reinstatement with or by Defendants, or its parent companies, subsidiaries, affiliates, divisions, predecessors, successors and/or related companies, at any time in the future.  Kirkwood agrees and acknowledges that his signature on this Agreement is grounds for immediate rejection of any application for employment or reinstatement submitted by him. Furthermore, nothing in this Paragraph shall impact Kirkwood's employment relationship with any companies that subsequently merge with, acquire, or are acquired by Defendants, nor will it preclude Kirkwood from applying for employment with any companies which are not currently owned or affiliated with Defendants but which subsequently merge with, acquire, or are acquired by Defendants.

8.    **Acknowledgment of Receipt of All Payment Owed:**  Kirkwood agrees and acknowledges that he has received all salary, wages, commissions, Paid Time Off (PTO), overtime payments, reimbursements, liquidated damages and employee benefits to which Kirkwood was and/or is entitled as a result of Kirkwood's employment with Defendants, and specifically waives, releases and discharges any right or entitlement he may have to any further compensation or other payments from Defendants, except as set forth in this Agreement.

9. **Pending Actions or Claims/Leave.**   Other than *Kirkwood v. Noble Food Group, Inc.* et all, currently pending in the United States District Court for the Western District of Washington (Case No. 2:18-CV-00630), Kirkwood affirms that he has not filed any other lawsuits, charges, or claims against Defendants at the time he executes this Agreement.  Further, Kirkwood affirms has not suffered any work-related illness, occupational disease, or injury that could form the basis of any workers' compensation or disability claim as of the date he executed this Agreement.  He further also affirms that he has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or similar state or local leave or disability accommodation laws.

10. **Non-Disparagement:**  Kirkwood agrees that he will neither say, write nor communicate in any manner to any person or entity anything derogatory or disparaging about Defendants, regardless of the truth or falsity of the information, except that nothing in this provision shall prevent Kirkwood from making any truthful statement in connection with any legal proceeding or any investigation by any governmental authority. Kirkwood understands that he should direct inquiries from his employers or prospective employers seeking verification of his employment with Defendants to: Human Resources Director, Cheryl Reichenberger at Cheryl.r@noblefoodgroup.com or 541.505.7478, or her successors.  Defendants hereby confirm that, upon receipt of a request for information from Kirkwood's employers or prospective employers seeking verification of his employment with Defendants, Defendants shall provide or confirm only Kirkwood's employment status, dates of employment and job title, and shall not disclose any information about the circumstances of or reasons for the termination of his employment with the Defendants.

11.    **Attorneys' Fees.**  Subject only to the application for attorney's fees as set forth in the Settlement and Release Agreement in connection with the Lawsuit, Kirkwood expressly acknowledges and agrees that he alone is responsible and liable for paying any and all attorneys'

4

fees and related costs and disbursements he has incurred in connection with (i) his prior employment relationship with Defendants and the termination of that relationship, (ii) the claims he has asserted or alleged or could have asserted or alleged against Defendants, and (iii) the negotiation and drafting of this Agreement, and that Defendants have no responsibility or obligation whatsoever to pay any such attorney's fees, costs or disbursements.

**12.** **Medicare Reporting Requirements.** The Parties have considered Medicare's interest in this matter, if any, and Kirkwood declares and expressly warrants that, as of the date he signed this Agreement, he was not Medicare eligible (*i.e.*, is not 65 years of age or older, is not suffering from end stage renal failure or ALS, has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services ("CMS") (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Kirkwood under this settlement, Kirkwood agrees to: (i) indemnify, defend, and hold the Company harmless from any action by CMS relating to medical expenses of Kirkwood; (ii) reasonably cooperate with the Company upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Kirkwood is required to indemnify the Company under this paragraph; and (iii) waive any and all future actions against the Company for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A). Kirkwood agrees to complete the Medicare Information Authorization Form (attached as Exhibit A to this Agreement) and to deliver the completed form to the Company's attorneys.

**13.** **Specific Release of Age Discrimination in Employment Act Claims.**

  **a.** **Waiver of ADEA Claims:** Kirkwood acknowledges that this Agreement includes a release and waiver of any and all claims of age discrimination Kirkwood may have under the Age Discrimination in Employment Act (ADEA) and the Older Worker Benefits Protection Act. Kirkwood understands that Kirkwood is not releasing any ADEA claims that arise after Kirkwood signs this Agreement.

  **b.** **Consideration for Waiver of ADEA Claims:** The parties agree that the promises set forth in Paragraph 4 are being provided, in part, in exchange for Kirkwood's knowing and voluntary release and waiver of all rights and claims Kirkwood has or may have arising under the ADEA.

  **c.** **Consideration Period:** Kirkwood acknowledges that the Company has advised Kirkwood, in writing, to consult with an attorney prior to executing this Agreement, and that the Company provided Kirkwood with at least twenty-one (21) days to review and consider this Agreement before executing it. Kirkwood agrees that, if Kirkwood executes this Agreement prior to the end of the twenty-one (21) day period, such early execution was a knowing and voluntary waiver of Kirkwood's right to consider this Agreement for at least twenty-one (21) days.

  **d**. **Right to Revoke ADEA Claims:** Kirkwood and the Company agree that, for a period of seven (7) calendar days following the execution of this Agreement, Kirkwood may revoke those provisions of this Agreement releasing and waiving Kirkwood rights and claims under the ADEA, and those provisions shall not become effective or enforceable until the

revocation period has expired without Kirkwood exercising the right to revoke.  Should Kirkwood exercise Kirkwood's right to revoke under this provision, Kirkwood shall only be entitled to $500 and shall not be entitled to the other benefits and promises set forth in Paragraph 4.  If Kirkwood wishes to revoke, Kirkwood must do so by confirmed delivery of written notice of revocation to Cheryl Reichenberger at Cheryl.r@noblefoodgroup.com, no later than the seventh (7th) day following Kirkwood's execution of this Agreement.  Kirkwood's initials at the bottom of this page indicate that Kirkwood has specifically read this section and understands its terms.

   **e.**  **Binding Effect of Other Terms:**  All other terms and conditions of this Agreement shall be binding and enforceable immediately upon Kirkwood's execution of this Agreement, and shall remain effective regardless of whether Kirkwood revokes Kirkwood's waiver and release of ADEA rights and claims.

**13.**  **Knowing and Voluntary Agreement.**  The Parties to this Agreement acknowledge and agree that each of them has had a full opportunity to carefully review the terms and provisions of this Agreement and to review the Agreement with their own attorney, that to the extent they wanted to talk to an attorney about this Agreement they have availed themselves of that right, and that each of them enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other Party to this Agreement other than those specifically set out herein and that they understand this Agreement constitutes a final and complete release of all claims against the Party released, regardless of their kind or character, including any possible claim which might be discovered in the future.  By executing this Agreement, all the Parties represent and agree that they have carefully read and fully understand all the provisions of this Agreement, and that they are knowingly and voluntarily entering into this Agreement.

**14.**  **Remedies upon Breach.**  The Parties acknowledge and agree that, in the event of a breach of any of the terms or provisions of this Agreement, nothing in this Agreement shall be construed to preclude or limit any party from asserting claims or filing a lawsuit for the purpose of: (a) recovering moneys paid under this Agreement; (b) enforcing rights under this Agreement; or (c) pursuing any other rights and remedies available under law, including equitable relief, injunctive relief, and damages.

**15.**  **Interpretation of Agreement.**  The Parties to this Agreement acknowledge and agree that: (a) this Agreement and its reduction to final written form are the result of good faith negotiations between the Parties through their respective counsel; (b) said counsel have carefully reviewed and examined this Agreement before execution by said Parties, or any of them; and (c) any statute or rule of construction that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

**16.**  **Assignability and Binding Effect.**  This Agreement, and all the provisions contained herein, shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, successors and legal representatives of Kirkwood, and shall inure to the benefit of and be binding upon Defendants and its respective successors and assigns.  This Agreement may be transferred or assigned by Defendants.  The obligations of Kirkwood under this Agreement may not be delegated and Kirkwood may not assign, transfer, or otherwise convey or dispose of this Agreement, or any

     **a.**     Kirkwood represents that he is not aware of any claims against Defendants other than those asserted in the Lawsuit and acknowledges that he has had the opportunity to discuss this matter with counsel of his choice, including Richard M. Paul III of Paul LLP, Mark A. Potashnick of the law firm Weinhaus & Potashnick, and Jason Murphy of Phillips Law Firm, PLLC.

     **b.**     Kirkwood represents and warrants that Kirkwood has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

**19.**    **Governing Law.**  This Agreement, and any disputes arising under or in connection with it shall be governed, construed and enforced in accordance with the laws of the State of Washington, without regard to conflict of law principles.

**20.**    **Multiple Originals:**  This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.  Electronic or fax revisions shall be deemed originals.

DATED: _11_/_28_/_, 2018

DEFENDANTS NOBLE FOOD GROUP, INC., NFG CHICAGO, LLC, NFG PORTLAND, LLC, NFG SALEM, LLC, NFG SAN FRANCISCO, LLC, and NFG SEATTLE, LLC., on behalf of itself and its related entities

Signature:_____

By: _GEORGE   VANDENBERG_____

Their: __CEO / PRESIDENT_____

DATED: _____, 2018

PLAINTIFF GARY KIRKWOOD

By:_____
      Gary Kirkwood

of its rights hereunder, and any such attempted delegation, assignment or disposition by Kirkwood shall be null, void, and without effect.

17. **No Changes to Agreement:**   No modifications or amendments to any of the terms, conditions, or provisions of this Agreement and the incorporated Settlement and Release Agreement may be made except by a written agreement executed by all Parties hereto.

18. **Representations regarding of Claims:**

    **a.**   Kirkwood represents that he is not aware of any claims against Defendants other than those asserted in the Lawsuit and acknowledges that he has had the opportunity to discuss this matter with counsel of his choice, including Richard M. Paul III of Paul LLP, Mark A. Potashnick of the law firm Weinhaus & Potashnick, and Jason Murphy of Phillips Law Firm, PLLC.

    **b.**   Kirkwood represents and warrants that Kirkwood has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

19. **Governing Law.**  This Agreement, and any disputes arising under or in connection with it shall be governed, construed and enforced in accordance with the laws of the State of Washington, without regard to conflict of law principles.

20. **Multiple Originals:**  This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.  Electronic or fax revisions shall be deemed originals.

DATED: _____, 2018        DEFENDANTS NOBLE FOOD GROUP, INC., NFG CHICAGO, LLC, NFG PORTLAND, LLC, NFG SALEM, LLC, NFG SAN FRANCISCO, LLC, and NFG SEATTLE, LLC., on behalf of itself and its related entities

        Signature:_____

        By:_____

        Their: _____

DATED: 11/27_____, 2018        PLAINTIFF GARY KIRKWOOD

        *Gary M. Kirkwood*
        By:_____
        Gary Kirkwood

# Exhibit A

**MEDICARE INFORMATION AND AUTHORIZATION FORM**

       The Center for Medicare & Medicaid Services (CMS) is the federal agency that oversees the Medicare program. In certain situations, Medicare may make a "conditional payment" so as not to inconvenience the beneficiary, and seek to recover the payments later. When an employee receives severance or other payments in exchange for a release of claims, Section 111 of the Medicare, Medicaid and SCHIP Extension Act (MMSEA), requires employers to determine whether the employee is a Medicare Beneficiary and, if so, to report the severance or other payment and related information.

       Please review this picture of the Medicare card to determine if you have, or have ever had, a similar Medicare card and complete Sections I and II of this Form.

Medicare card.



**Section I**

| Are you presently, or have you ever been, enrolled in Medicare Part A or Part B? | ☐Yes | ✓No |
|---|---|---|

**Full Name:** *(Please print the name exactly as it appears on your SSN or Medicare card if available.)*

| G | a | r | y |  | M |  | K | i | r | k | w | o | o | d |  |  |  |  |  |  |  |  |  |

| **Medicare Claim Number:** | | | **Date of Birth (Mo/Day/Year)** | | - | | | - | | | |

| **Social Security Number:** *(If Medicare Claim Number is Unavailable,* | | **Sex** | ☐Female | ✓Male |

**Section II**

I authorize Noble Food Group, Inc. ("the Company") and/or the Company's insurers/agents/professional employer organization to run a query with CMS to determine my Medicare eligibility and enrollment status (i.e. whether I am a Medicare Beneficiary).  If CMS identifies me as a Medicare Beneficiary, I further authorize the Company and/or the Company's insurers/agents/professional employer organization to take all necessary steps to report any required information in connection with any severance or other payments I will receive in

9

exchange for a release of claims.  I understand that the information requested is to enable the Company and/or the Company's insurers/agents/professional employer organization to meet any mandatory reporting obligations under Medicare law. The information provided for confirmation of my Medicare status, including my name, gender, date of birth, and Social Security Number, is complete, accurate, and current.

GARY M. KIRKWOOD
_____
**Name (Please Print)**

*Gary M. Kirkwood*                    11/27/18
_____
**Signature**                **Date**

*If you have completed Sections I and II above, stop here and submit this form to the Company.  If you are refusing to provide the information requested in Sections I and II, proceed to Section III.*

**Section III**

_____
**Name (Please Print)**

For the reason(s) listed below, I have not provided the information requested. I understand that if I am a Medicare Beneficiary and I do not provide the requested information, I may be violating obligations to assist Medicare in coordinating benefits to pay my claims correctly and promptly.

**Reason(s) For Refusal To Provide Requested Information:**

_____

_____

_____        _____
**Signature of Person Completing Section III**           **Date**